Argued October 5, affirmed November 10, petition for
rehearing denied December 7, 1965

# BENSON *v.* GLADDEN
### 407 P. 2d 634

*Howard R. Lonergan,* Portland, argued the cause and submitted briefs for appellant.

*Mallory C. Walker,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was Robert Y. Thornton, Attorney General, Salem.

Before MCALLISTER, Chief Justice, and PERRY,

134

SLOAN, GOODWIN, DENECKE, HOLMAN and SCHWAB, Justices.

SCHWAB, J. (Pro Tempore)

This is an appeal from a judgment dismissing the petition of Lennart A. Benson in consolidated post-conviction and habeas corpus proceedings[①] in Marion county circuit court brought to set aside two judgments of conviction of forgery in Lincoln county circuit court sentencing Benson to three years imprisonment on each of the convictions with the sentences running concurrently.

The trial on the petition was essentially on the record in the criminal proceedings in Lincoln county circuit court which was a consolidated trial under both indictments.

Benson's petition alleges that his imprisonment under the judgments of conviction is unlawful on the following grounds: "(a) lack of jurisdiction of the courts to impose judgments of conviction herein and unconstitutionality thereof; (b) substantial denial in the proceedings resulting in petitioner's conviction and in the appellate review thereof of petitioner's rights under the due process and equal protection clauses of section 1, 14 Amendment, United States Constitution and Article I, sections 9, 10, 11, 13, 16, 20, 21, 22 and 23 Oregon Constitution" because "the record shows he is innocent of the crime of forgery because:

"(a) The checks are not false instruments no matter how interpreted, but are valid instruments as a matter of law;

---

[①] In his brief petitioner states that he was uncertain whether his remedy lay in habeas corpus or under the post-conviction act and, therefore, sought the same relief under both.

"(b) The state admits there was no intent to defraud any particular person;

"and the record shows his counsel and attorneys were incompetent in having no understanding of the law of forgery, failed to present the matters showing his innocence either to the trial court or to the appellate court, and neither the prosecutor, trial court nor appellate court on its own gave any consideration to these matters."

We first dispose of the question as to whether this is a post-conviction or habeas corpus proceeding.

■ The Oregon Post-Conviction Hearing Act, Oregon Laws 1959, ch 636, ORS 138.500 to 138.680 and ORS 34.330 (1959) is thoroughly analyzed in Collins and Neil, *The Oregon Postconviction-Hearing Act,* 39 Or L Rev 337. As that article points out at page 346, this act provides at least as broad relief as was previously obtainable by habeas corpus inquiry into criminal convictions. See ORS 138.530 (2).[2] Section 22 of the 1959 act, codified as ORS 34.330, accomplishes the aim of the act to replace habeas corpus with post-conviction proceedings when a criminal conviction is challenged. The pertinent portion of the article cited above reads as follows:

"Section 22. ORS 34.330 is amended to read as follows:

"34.330. The following persons shall not be allowed to prosecute the writ:

"(1) Persons imprisoned or restrained by vir-

---

[2] "(2) Whenever a person petitions for relief under ORS 138.510 to 138.680, ORS 138.510 to 138.680 shall not be construed to deny relief where such relief would have been available prior to May 26, 1959, under the writ of habeas corpus, nor shall it be construed to affect any powers of executive clemency or pardon provided by law."

tue of process issued by a court of the United States, or a judge, commissioner or other officer thereof, in cases where such courts, or judges or officers thereof, have exclusive jurisdiction under the laws of the United States, or have acquired exclusive jurisdiction by the commencement of actions, suits or other proceedings in such court, or before such commissioner or other officer.

"(2) Persons imprisoned or restrained by virtue of the judgment or decree of a competent tribunal of civil or criminal jurisdiction, or by virtue of an execution issued upon such judgment or decree.

"(3) *Except as provided in section 6 of this 1959 Act, persons eligible to obtain post-conviction relief pursuant to this 1959 Act.*

"This section accomplishes the aim of the act to replace habeas corpus (as well as other post-conviction remedies) with a single uniform proceeding when a criminal conviction is challenged. The addition of the third subsection to section 34.330 will limit the application of the habeas corpus statutes to situations in which such a challenge is being made. By virtue of this amendment, habeas corpus in the circuit court will never be available when a prisoner may file a petition under the act.

"An erroneous cross reference occurs in the amended subsection (3) of section 34.330. The cross reference was intended to be to section 5 of the act—Or. Rev. Stat. sec. 138.530 (3)—rather than section 6—sec. 138.560. The intention of the cross reference was to except habeas corpus in the supreme court, which derives from the Constitution, from the language of the amendment. The draftsmen inadvertently did not change this cross-reference to reflect a renumbering of earlier sections before the bill was submitted to the Legislature. The cross reference to section 6 is meaningless.

"The question arises whether the amendment

of section 34.330 in this respect may 'suspend' the writ of habeas corpus as guaranteed by the Oregon constitution. The act would appear to provide for postconviction relief upon grounds at least as comprehensive as those formerly available in habeas corpus proceedings. If this is the case, habeas corpus, as used to attack a criminal conviction, has been superseded in name only. Indeed, in apparently the first case involving this issue, a circuit court upheld the constitutionality of the act against a claim that the substitution of the remedy of the act for habeas corpus abridged the guarantee of the writ. The court relied on Shakespeare's dictum that a 'rose by any other name would smell as sweet.' " Collins and Neil, op. cit. at 363-64.

These proceedings are under the post-conviction hearing act and are not habeas corpus proceedings.

The provisions of the post-conviction act, ORS 138.530, under which petitioner seeks relief, are:

"(1) Post-conviction relief pursuant to ORS 138.510 to 138.680 shall be granted by the court when one or more of the following grounds is established by the petitioner:

"(a) A substantial denial in the proceedings resulting in petitioner's conviction, or in the appellate review thereof, of petitioner's rights under the Constitution of the United States, or under the Constitution of the State of Oregon, or both, and which denial rendered the conviction void.

"(b) Lack of jurisdiction of the court to impose the judgment rendered upon petitioner's conviction."

Benson's petition for post-conviction relief, the essentials of which are set forth supra, bring him within the purview of this act and entitle him to have his contentions considered on their merits unless he is

barred from seeking relief by virtue of that portion of the act, ORS 138.550 (2) which states:

> "(2) When the petitioner sought and obtained direct appellate review of his conviction and sentence, no ground for relief may be asserted by petitioner in a petition for relief under ORS 138.510 to 138.680 unless such ground was not asserted and could not reasonably have been asserted in the direct appellate review proceeding. If petitioner was not represented by counsel in the direct appellate review proceeding, due to his lack of funds to retain such counsel and the failure of the court to appoint counsel for that proceeding, any ground for relief under ORS 138.510 to 138.680 which was not specifically decided by the appellate court may be asserted in the first petition for relief under ORS 138.510 to 138.680, unless otherwise provided in this section."

■ Benson was represented by two separate counsel of his own choosing upon his trial for forgery. He retained two additional counsel to argue his motion for a new trial. When this motion was denied, he retained one of the two counsel who had represented him in connection with the motion for a new trial to prosecute an appeal from the convictions. When his convictions were affirmed on appeal, *State v. Benson,* 235 Or 291, 384 P2d 208, counsel who had handled the appeal filed a petition for rehearing which was denied. He then obtained his present counsel who filed a second petition for rehearing, which was denied.[9] It follows that he is barred from seeking post-conviction relief unless it can be said that he could not reasonably have asserted his present contentions in the direct appellate review proceedings.

---

[9] The issues raised in the post-conviction proceedings were raised for the first time in the second petition for rehearing.

■ An examination of the record discloses that there is no information now known to petitioner and his counsel that was not available at the time of trial. In *State v. Avent,* 209 Or 181, 302 P2d 549, this court held that it would, in some circumstances in criminal cases, relax the rule that it would not consider error not legally excepted to if, upon an examination of the entire record, it could say that error was manifest and the ends of justice would not otherwise be satisfied. Further, Rule 46 of this court provides, "In appeals in actions at law no alleged error of the circuit court will be considered by this court unless regularly assigned as error in the appellant's opening brief, except that this court reserves the right to take notice of an error of law apparent on the face of the record." It follows that there was no procedural bar to bringing egregious error, if any, to the attention of this court on the direct appeal for such consideration as in its discretion it felt justified in giving, even though such error was not legally excepted to on trial or legally assigned on appeal.

■ In *Delaney v. Gladden,* 232 Or 306, 308, 374 P2d 746, cert. den., 372 US 945, 83 S Ct 940, 9 L Ed2d 970, in applying ORS 138.550 (2), we held that the post-conviction act was not intended to provide a second appeal and that " 'no procedural principle is more familiar to this Court than that a constitutional right may be forefeited in criminal as well as civil cases by failure to make timely assertion of the right before a tribunal having jurisdiction to determine it' ", citing *Yakus v. United States,* 1944, 321 US 414, 444, 64 S Ct 660, 677, 88 L Ed 834, 859. The fact that the post-conviction trial in circuit court was essentially on the record of the criminal trial in itself demonstrates

that petitioner is barred from post-conviction relief unless he can prove that his counsel on appeal was so grossly incompetent that it can be said that for practical purposes he had no counsel on appeal. What this court said in *State v. Abel,* 241 Or 465, 406 P2d 902, as to trial counsel is equally applicable to appellate counsel:

"\* \* \* The common complaint of the convicted defendant on appeal that he has been denied due process of law because of alleged errors committed at the trial is, in most instances, without any justification whatsoever. It is blowing up errors of judgment into a denial of constitutional rights."

In the above case, this court, speaking through LUSK, J., set forth quotations from opinions of other jurisdictions which are worthy of repetition here:

" 'One who asserts that his attorney did not provide legal representation adequate to meet the requirements of the Sixth Amendment has a heavy burden to sustain. This court has repeatedly held that it is not enough to show merely that \* \* \* counsel was inexperienced; it is necessary to show that counsel was "so incompetent or inefficient as to make the trial a farce or a mockery of justice." Peek v. United States, 9 Cir., 321 F.2d 934, 944. The burden was not sustained here. Reid v. United States (CA 9 Or) 334 F2d 915, 919.' " *State v. Abel,* supra at p. 467.

" 'As to the requirement under the Fourteenth Amendment, the services of counsel meet the requirements of the due process clause when he is a member in good standing at the bar, gives his client his complete loyalty, serves him in good faith to the best of his ability, and his service is of such character as to preserve the essential integrity of the proceedings as a trial in a court of justice. He is not required to be infallible. We know that some

good lawyer gets beat in every law suit. He made some mistakes. The printed opinions that line the walls in our offices bear mute testimony to that fact. His client is entitled to a fair trial, not a perfect one.' U. S. ex rel Weber v. Ragen (CA 7 Ill) 176 F2d 579, 586, per Minton, J." *State v. Abel,* supra at p. 468.

In apparent recognition of his dilemma, Benson asserts in his brief not only the alleged errors of law but also "the record shows his counsel and attorneys were incompetent * * *" and "* * * failed to present the matters showing his innocence * * * to the appellate court * * *."

We examine the record not simply for error, for error alone will avail the petitioner nothing, but for error so palpable and fundamental that appellate counsel's failure to raise it on direct appeal must be said to be subject to no explanation other than incompetence.

The two indictments are substantially identical except that they set forth different checks. Accordingly, we set forth only the first.

"THE STATE OF OREGON )
)
vs. ) INDICTMENT
"LENNART A. BENSON )

"Lennart A. Benson is accused by the Grand Jury of the County of Lincoln by this Indictment of the crime of forgery committed as follows:

"The said Lennart A. Benson on the 25th day of November, 1961, in the said County of Lincoln and State of Oregon, then and there being, did then and there unlawfully and feloniously, with intent to injure and defraud, falsely make, forge and counterfeit a certain bank check for the payment of

money, which said false, forged and counterfeited bank check is in words and figures, as follows:

"PHELPS & HINES LOGGING CO., INC.

2008

"Oceanlake, Oregon_____ Nov. 25 ___196 __

"PAY
TO THE
ORDER OF_ Lincoln Tillamook Tel. Co._ $109 44
 100

"BONDED
3854101___ $109 Dols 44 cts_____ DOLLARS

"OCEANLAKE BRANCH

"L I N C O L N B A N K
 of Taft, Oregon

"OCEANLAKE, OREGON

 PHELPS & HINES LOGGING CO., INC.
 By s/ Thomas M. Hines
 By s/ Lennart A. Benson
"contrary to the statutes in such cases made and provided and against the peace and dignity of the State of Oregon."

The evidence adduced on trial under these indictments shows that the signature card at the bank upon which these checks were drawn was as follows:

"THIS CERTIFIES THAT on March 20, 1956, a meeting of the board of directors of Phelps & Hines Log Co. Inc. adopted a resolution authorizing those officers, whose signatures appear on the reverse side of this card, to withdraw any funds from an account in the LINCOLN BANK, Taft, Oregon, such withdrawals to be made by means of orders, checks, receipts, or otherwise, whether or not they are payable to the individual order of any person or persons authorized to sign the same, and authorizing and directing the Secretary of this corporation to certify to said Bank the signature of the persons authorized to transact business on

the account. Mailing of statements and vouchers to us at our risk is authorized.

Roscoe E. Phelps⊕
_____
President

Thomas M. Hines⊕
_____
Secretary"

"(Seal)

"C104

## CORPORATION SIGNATURE CARD

Phelps & Hines Log Co. Inc.
_____

1._____Roscoe E. Phelps⊕_____ (Title)

 and or

2._____Thomas M. Hines⊕_____ (Title)

 and or

3._____Lennart A. Benson⊕_____ (Title)

 and or

4._____ (Title)

 and or

5._____ (Title)

 and or

6._____ (Title)

Address _____

Opened by_____Date_____Amount____ "

⊕ The actual exhibit contained the handwritten signatures.

The checks set forth in the indictment and the signature card are the basis of Benson's contention in these proceedings that the checks are not false instruments no matter how interpreted, but are valid instruments as a matter of law. He supports this contention by two arguments. (1) That the check on its face purports to provide for Hines' signature by Benson as an agency endorsement; and (2) that the agreement with the bank made a check on the Phelps & Hines Logging Co., Inc. account a valid check with only the signature of Benson, the other purported signature being a mere surplusage.

The first of these grounds has no merit. The printed check form read as follows:

"PHELPS & HINES LOGGING CO., Inc.
OCEANLAKE OREGON

_____ 19___

Pay
 To the
Order of _____ $_____

_____DOLLARS

PHELPS & HINES LOGGING CO., Inc.

OCEANLAKE BRANCH
LINCOLN BANK
OF TAFT, OREGON
OCEANLAKE, OREGON

BY_____

BY_____ "

The two lines under the name of the maker-corporation, prefaced with the word "BY" in capitals, clearly indicated a need for the signature of two agents of the corporation. Benson did not add below Hines' name a small "by Lennart A. Benson." He only added his name, "Lennart A. Benson" as one of the agents for the corporation. Benson's contentions notwithstanding, if anything could be held as a matter of law about this check, it was that Benson's signature did not purport to be an agency endorsement for Hines. Looking at it from a standpoint most favorable to Benson, it was for the jury to determine whether this was an agency endorsement or a fraudulent signature, and the jury decided adversely to him.

██ The argument that the signature card on file with the bank authorized the bank to treat a check drawn on the Phelps & Hines Logging Co., Inc. account bearing only Benson's signature as a valid check presents a closer question. If it must be so construed, then it could logically be argued that Benson's act in falsifying Hines' signature was not forgery because it did nothing to affect the legal import of the document. Such construction is not required. No testimony was produced at the trial concerning the circumstances under which this signature card was executed or the understanding of the bank as to how many signatures were required. The signature card was not a written agreement between the corporation and the bank. It was obviously intended for two purposes—to identify the signatures upon which the corporation would make order upon the bank, and to show the policy of the corporation as to what persons could draw funds from its account. "And/or" is an unfortunate phrase which, although troublesome, is frequently used. "And or"

with nothing between the two words, as used in the printed signature card, is obviously incomplete. A reasonable inference is that when complete the form would have had the word "and" or the word "or" stricken out on each of the two lines where they appear to effect the intentions of the parties. The uncontradicted testimony of all of the witnesses whose testimony bore any relevance on this subject was that the intention and understanding of the parties, Phelps, Hines, and Benson, was that checks drawn on this account required the separate signatures of two of them. The signature card in its uncompleted form was ambiguous and the jury had the right to infer from the uncontradicted evidence that a check drawn by Benson alone on the Phelps & Hines Logging Co., Inc. account was not a valid check. The whole theory of Benson's case was bottomed on the proposition that two signatures were required. Over fifty checks drawn on the same account were introduced into evidence, many of them by Benson's attorneys. All of them bore two signatures.

An examination of the alternatives open to Benson reveals the reasons for the trial strategy which Benson's contentions forced his counsel to use. If he had argued that only one signature was necessary to make a valid check but that he did not know this and did not have authority to sign his employers' names, he would have conceded embezzlement. If he took the position that only one signature was necessary to make a valid check and he knew it, he likewise would have conceded that his only purpose in falsifying a second signature was to defraud his employers and therefore was embezzlement. If he contended that he had in fact not signed his employers' signatures to the checks,

he would have been proven guilty of forgery by hand-writing experts. If he admitted that a second signa-ture was required and that he placed it on the checks without authority, he would have admitted forgery. He was caught between Scylla and Charybdis. His only route to acquittal was to take the position that two signers were required to make valid checks and that because of the exigencies of the business opera-tions he was authorized by Hines and Phelps to sign their names on checks.

Benson testified at length, painting a picture of himself as desperately striving to hold the office end of the business together while Hines and Phelps were taking care of the outside logging operations and other business of their own. To this end his counsel intro-duced by way of exhibit and testimony of Benson him-self a great mass of evidence which would have been completely extraneous except for this theory of de-fense. We quote from the closing argument of one of petitioner's counsel:

"By and large, the mass of material that was said here means very little. It doesn't mean a great deal, because Mr. Benson is charged specifically with forging three instruments[9] and those are the instruments that you must consider and decide whether or not he in fact did forge these instru-ments or did alter them. What must the State prove to get a conviction? This is what the Court will instruct you, they must prove he signed the instruments—we cheerfully admit we did, we even brought in more instruments that Mr. Benson signed. There is no question about that. Secondly,

[9] The proceedings commenced as a consolidated trial under three indictments. As to one the issue was not a false signa-ture but a check altered as to amount. The jury found the defendant not guilty on this indictment.

it must be proved that he did this without authority; that we dispute very very seriously."

And again:

"* * * We believe without any question whatsoever that he signed the checks. We admitted it. We even put our own checks in as evidence along with the State's where he signed these names. We've got lots more, we have all kinds of them. He has been signing these checks for five years. Why did we put those in? Because it was ratification. They knew or should have known or ought to have know[n] (sic) what has been going on. How can they dump three corporations in this man's lap in 1957 and say we're going to cut trees, you run the corporation, we don't want anything to do with it, and have him sign checks for five years and come in here and naively say they didn't know he was signing checks. We asked, 'Did you ever go completely through the corporation books?' 'No, we didn't.' As a corporation official you ought to, somebody ought to."

■ Petitioner argues that the state's case failed for proof of any intent to defraud and further, no proof of intent to defraud any particular person. One of the two checks was payable to the local telephone company. There was evidence that part of the amount included Benson's personal phone bill in his capacity as an insurance agent and Justice of the Peace. The check which was the basis of the other indictment was payable to Benson himself. The record is replete with evidence that the accounts of the corporation, which Benson maintained, were complicated and confused, but there was ample evidence from which the jury could find that he intended to use the proceeds of these checks for his own purpose. Normally, an intent to defraud may be, and often must be, inferred

from the circumstances in which a false instrument is executed or issued. *People v. Valdes,* 155 Cal App2d 613, 318 P2d 118; *Willetts v. Scudder,* 72 Or 535, 545, 144 Pac 87; *State of Oregon v. Wheeler,* 20 Or 192, 198, 25 Pac 394, 23 Am St Rep 119, 10 LRA 779. "[T]he action is deemed criminal because of an intent to defraud rather than because such an intent is directed toward a specific individual." *The People v. Crouch,* 29 Ill2d 485, 194 NE2d 248, 250.

■ The record demonstrates that petitioner's attack on the competency of all of his previous counsel is wholly without merit. Benson's numerous trial and appellate counsel afforded him able and skillful representation. Their inability to make a silk purse out of a sow's ear ought not reflect on their competency. Petitioner's present counsel should well know that even the most qualified and resourceful defense counsel cannot guarantee acquittal of the guilty and that, even given legitimate differences of legal opinion, vigorous advocacy does not require or justify unwarranted denigration of fellow counsel.

Affirmed.