Argued February 1, reversed and remanded with
directions April 2, 1973

THOMAS A. DORSEY (No. 76552), *Appellant,*
*v.* CUPP, *Respondent.*

508 P2d 445

*John K. Hoover,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*William R. Canessa,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

FORT, J.

This is an appeal from a post-conviction order denying the petitioner relief from his entry of a plea of guilty. He appeals.

The record establishes that the interrelationship of two problems underlies this appeal. One is the effect of plea bargaining leading to a guilty plea; the other, that of adequacy of counsel.

The post-conviction court made an express finding of fact:

"2. Trial counsel for petitioner advised him that if the sole basis of his guilty plea was the denial of his Motion to Suppress, he could have the denial of that motion reviewed through post-conviction proceedings."

The state here does not contend that this advice was not erroneous.[①] It points out, however, that the post-conviction court also found that the petitioner pleaded guilty not only in reliance on that advice, "but also in hopes of receiving a lighter sentence and to avoid return to Idaho for a probation violation."

Accordingly, it concludes, as did the post-conviction court, that he was not prejudiced by his attorney's erroneous advice, and thus, under the rule of *Dixon v. Gladden,* 250 Or 580, 444 P2d 11 (1968), the judgment should be affirmed.

This case is further complicated, however, by the fact that the evidence is uncontradicted that prior to entry of the plea, a substantial plea bargaining process was carried on between the state and petitioner's counsel. It is also uncontradicted that in the course of this the deputy district attorney expressly advised petitioner's counsel that under the law the petitioner would not, provided he pleaded guilty solely on that ground, waive his right to have the correctness of the trial court's rulings on the motions to suppress evidence reviewed in the post-conviction court. Obviously such advice was given to petitioner's counsel with full awareness that it would influence the petitioner in his decision to plead guilty, since it related to the only legal consideration upon which at that point he might base an appeal.

Counsel also testified that he relied on that

---

[①] In Richardson v. Williard, 241 Or 376, 377, 406 P2d 156 (1965), the court said:

"The only question that this court could have considered on an appeal from the original judgment was whether the punishment was cruel and unusual or not proportioned to the offense. ORS 138.050. *State v. Gidley,* 1962, 231 Or 89, 371 P2d 992. * * *"

representation, told the petitioner of it and made no independent investigation of the law.[2] He also testified that although he had had wide experience in criminal trial defense work, he had never handled an appeal in a criminal case and had no experience with post-conviction matters.

Since the state does not here contend that the statement of the law made by both the deputy district

---

[2] Petitioner's trial attorney testified in the post-conviction court as follows:

"Q [BY PETITIONER'S ATTORNEY] Did you explain to him that on post conviction relief, he took on the burden of showing that the evidence was illegally seized?

"A [BY PETITIONER'S TRIAL ATTORNEY] No.

"Q You made no explanation concerning a burden of proof in the two proceedings?

"A Not that I recall.

"Q But you did explain to him that he could obtain post conviction relief if the sole reason for pleading guilty was the eminent [sic] use of the illegally seized evidence?

"A This is what I advised him, that is correct, and I was reiterating the district attorney's advice.

"Q You made no independent research in the matter?

"A No.

"Q So your advice to the defendant was based purely upon a reiteration of what * * * [the deputy district attorney] had advised you?

"A That is correct."

And later:

"Q Now, you tell us that your advice was based upon comments made by * * * [the deputy district attorney]. Why would you rely on comments made by * * * [the deputy district attorney]?

"A Well, first of all, the district attorney's office was trying to convict this man. Secondly, doing criminal work, I had a good general working relationship with the district attorney's office, particularly * * * [the deputy district attorney]. * * * [The deputy district attorney] had worked for the Court of Appeals. He had some official position in the Court of Appeals, and was knowledgeable in the areas of post conviction and appeal. And thirdly, without researching the question, it sounded rather reasonable to me."

attorney and by petitioner's trial counsel was not erroneous, it, in effect, concedes that the state itself was not only a party to, but the originator of, that error. This seems particularly significant when, as here, it is uncontradicted that extensive plea bargaining[3] between the state and petitioner's trial counsel preceded the entry of the plea, and that this erroneous advice was given and relied upon in connection therewith. We note that this conclusion seems inescapable from the testimony in the post-conviction hearing, despite the fact that the trial court at the time the defendant pleaded guilty was otherwise informed.[4]

---

[3] "A [BY PETITIONER'S TRIAL ATTORNEY] * * * At this point, we left it that we were going to go ahead and try the case, but I was also going to explore the plea bargaining situation.

"My next discussions were with Deputy District Attorney * * * and this involved a plea bargaining aspect. * * * [The deputy district attorney] told me that, well, I'm satisfied that, if Mr. Dorsey feels that his sole reason for pleading guilty or that he was compelled to plead guilty because all of this evidence was let in, that Mr. Dorsey, on this basis, would have post conviction relief available to him, if this be the sole compelling reason—so I continued on with my plea bargaining situation, and came back to Mr. Dorsey, and I told him somewhat shortly, it wasn't too long after the last suppression hearing, about my discussions with * * * [the deputy district attorney], and that he felt he would have post conviction relief if this was the thing that was compelling him to plead guilty, and I told him that it sounded reasonable under the circumstances."
Later, he also said:

"Q [BY STATE'S ATTORNEY] And your recollection is there was some type of discussion between you and the DA and you and the judge?

"A [BY PETITIONER'S TRIAL ATTORNEY] Oh, yes, there were discussions. I kept approaching the district attorney's office, trying to get them to remove this aspect of sale and these other situations, and to make telephone calls to Idaho, to the DA there."
The state offered no contradictory evidence.

[4]
"THE COURT: I will accept the plea of guilty with one reservation. Is there a plea bargain of any sort here?

In *Santobello v. New York,* 404 US 257, 92 S Ct 495, 30 L Ed 2d 427 (1971), the United States

"* * * [DEPUTY DISTRICT ATTORNEY]: No, your Honor.

"THE COURT: Well, now, let me ask. There could be a very sophisticated plea bargain such as an agreement that you wouldn't go after him for an enhanced sentence. I understand that Mr. Dorsey has some other prior convictions?

"* * * [DEPUTY DISTRICT ATTORNEY]: There has been no mention of it. Our office didn't intend to file any enhanced proceedings.

"THE COURT: You haven't mentioned this?

"* * * [DEPUTY DISTRICT ATTORNEY]: No.

"THE COURT: I also understand that there is some kind of hold or contemplated hold on Mr. Dorsey from—is it Idaho?

"* * * [PETITIONER'S TRIAL ATTORNEY]: Yes, it is.

"THE COURT: I thought * * * [petitioner's trial attorney] mentioned this to me.

"* * * [PETITIONER'S TRIAL ATTORNEY]: Yes, that's correct.

"THE COURT: That is, has there been any bargaining with respect to that?

"* * * [DEPUTY DISTRICT ATTORNEY]: No, your Honor. * * *"

Petitioner's trial attorney remained silent. The trial court thus was apparently misled by the state. On cross-examination in the post-conviction trial by the state, petitioner's trial attorney after having the foregoing called to his attention, said:

"Q [BY STATE'S ATTORNEY] * * * You were there in court, I take it, * * * [petitioner's trial attorney]?

"A Mm hmm.

"Q Would it be fair to say that your silence was an affirmation that there had been no plea bargaining?

"A No, I wouldn't say that. No question was directed to me, and I don't recall this question being asked. The judge didn't ask me.

"Q But you made no attempt to correct the record or correct what * * * [the deputy district attorney] had stated?

"A No—I don't know, unless it's contained in the record, I don't recall."

Supreme Court recently considered a case where as a part of the plea bargaining process the state had agreed to make no recommendation to the trial court concerning the length of sentence to be imposed. At the time of sentence the state was represented by different counsel who was unaware of the agreement. He did make a recommendation to the court. The trial court itself said at the time it was entirely unaffected by that recommendation and that it was imposing sentence solely on the basis of the presentence report and other material in the record.

Speaking through Mr. Chief Justice Burger, the court concluded:

"On this record, petitioner 'bargained' and negotiated for a particular plea in order to secure dismissal of more serious charges, but also on condition that no sentence recommendation would be made by the prosecutor. It is now conceded that the promise to abstain from a recommendation was made, and at this stage the prosecution is not in a good position to argue that its inadvertent breach of agreement is immaterial. The staff lawyers in a prosecutor's office have the burden of 'letting the left hand know what the right hand is doing' or has done. That the breach of agreement was inadvertent does not lessen its impact.

"We need not reach the question whether the sentencing judge would or would not have been influenced had he known all the details of the negotiations for the plea. He stated that the prosecutor's recommendation did not influence him and we have no reason to doubt that. Nevertheless, we conclude that the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case to the state courts for further consideration. The ultimate relief to which petitioner is entitled we

leave to the discretion of the state court which is in a better position. to decide whether the circumstances of this case require only that there be specific performance of the agreement on the plea, in which case petitioner should be resentenced by a different judge, or whether, in the view of the state court, the circumstances require granting the relief sought by petitioner, *i.e.*, the opportunity to withdraw his plea of guilty. We emphasize that this is in no sense to question the fairness of the sentencing judge; the fault here rests on the prosecutor, not on the sentencing judge." 404 US at 262-63.

*See also: Arrastia v. United States,* 455 F2d 736, (5th Cir 1972).

· 1, 2. It is equally implicit that when the state makes an express representation concerning his rights of appeal or to post-conviction relief under the law to a defendant or to his counsel, under circumstances where such advice is not only accepted but substantially influences the defendant to waive important rights and enter a plea of guilty, and such advice is conceded, as here, to have been erroneous, whether inadvertently so or not, then the defendant should be entitled to appropriate relief under the Post-Conviction Act. Here, this simply means the opportunity to have tested on appeal the trial court rulings on the motions to suppress.

We think the foregoing reasoning is not inconsistent with the views expressed by the Oregon Supreme Court in *North v. Cupp,* 254 Or 451, 456-59, 461 P2d 271 (1969), *cert denied* 397 US 1054 (1970); and *State v. Abel,* 241 Or 465, 469, 406 P2d 902 (1965). *See also,* Annotation, 25 L Ed 2d 1025, 1038, 1053 (1971), and cases cited therein.

Paraphrasing *Santobello,* nothing less fulfills "the

interests of justice and appropriate recognition of the duties of the prosecution in relation to * * * [representations] made in the negotiation of pleas of guilty" under these circumstances.

Accordingly, the judgment of the post-conviction court is reversed with directions to remand to the trial court with instructions to vacate the judgment, and, since no other procedure is available to petitioner to allow the testing on appeal⑨ of the denial of the motions to suppress, to vacate the plea of guilty.

LANGTRY, J., dissenting.

The court's opinion at bar fails to consider all of the trial court's findings in this post-conviction case. They are:

"1. Petitioner entered a plea of guilty to the charge of Unlawful Possession of a Dangerous Drug on November 24, 1971, and on December 6, 1971, was sentenced to a maximum of 18 months in the Oregon State Penitentiary.

"2. Trial counsel for petitioner advised him that if the sole basis of his guilty plea was the denial of his Motion to Suppress, he could have the denial of that motion reviewed through post-conviction proceedings.

"3. Petitioner entered a plea of guilty not only because of the denial of the Motion to Suppress, but also in hopes of receiving a lighter sentence and to avoid return to Idaho for a probation violation.

"4. *Petitioner failed to show that his attorney's advice prejudiced him.*

"5. *Petitioner has failed to show that he was denied effective assistance of counsel.*" (Emphasis supplied.)

The second question presented by petitioner is

---

⑨ ORS 138.060 (4) grants such right only to the state.

whether the giving of erroneous advice is in itself grounds for relief. Counsel for petitioner was active in filing motions on behalf of his client,[①] and aside from the one alleged error he gave competent advice concerning the consequences of the guilty plea. Upon the record, I do not think that the giving of the possibly erroneous advice amounted to a denial of the right to effective assistance of counsel. *Cf. Herron v. Cupp,* 1 Or App 300, 462 P2d 444 (1969); *North v. Cupp,* 254 Or 451, 461 P2d 271 (1969), *cert denied* 397 US 1054 (1970); *Benson v. Gladden,* 242 Or 132, 407 P2d 634 (1965), *cert denied* 384 US 908 (1966); *State v. Abel,* 241 Or 465, 406 P2d 902 (1965). That is what the trial court found.

Seemingly, because petitioner produced evidence to the effect that he was given erroneous advice by his counsel that had originated from the prosecutor's office, and he testified to the effect that it "substantially influenced" him, the court has found his petition must be allowed. But that finding ignores the fact that the trial court in the case at bar found there was no prejudice—that is, that petitioner was not "substantially influenced" by the erroneous advice. There was substantial evidence upon which the trial court could base such a finding. That evidence included information given to petitioner that if he stood trial there was a good chance of his being found guilty, and that in that event he could expect a sentence of five years' imprisonment. His counsel also testified to having advised him that the chances of overturning the ruling on the motion to suppress were questionable. Petitioner's sentence after the guilty plea turned out to

---

[①] Besides the motion to suppress, counsel testified he filed a motion that would have permitted defendant access to the county law library.

be what he was advised it probably would be with a guilty plea—18 months. Evidence showed that negotiations were carried on at the instance of his counsel with an Idaho district attorney which appear to have resulted in petitioner's not having had to answer in Idaho as a probation violator.

This is a statutory action at law. ORS 138.650. We do not try it de novo. Where a fact finding of a trial court is based upon evidence, it is our duty to affirm it in cases such as this. *Endsley v. Cupp,* 1 Or App 169, 173-74, 459 P2d 448 (1969), Sup Ct *review denied* (1970); *Alcorn v. Gladden,* 237 Or 106, 111, 390 P2d 625 (1964). I find nothing in *Santobello v. New York,* 404 US 257, 92 S Ct 495, 30 L Ed 2d 427 (1971), relied upon in the court's opinion at bar, which justifies a disregard of this rule. I do not think *Santobello* is in point. It is not contended that the prosecutor here made any "promise or agreement" that was an "inducement" for the plea. The record does not indicate that the legal advice given by the assistant district attorney to petitioner's trial counsel was a material element in the plea bargain. As we interpret petitioner's claim for relief he makes no claim that the fact that the advice originated in the office of the prosecutor was a factor that motivated his plea. His claim was that the advice of his counsel was erroneous and that if he had received correct advice he would not have pled guilty. The post-conviction court's findings of fact are a denial of this claim. I would affirm.