Argued October 17, 1977, affirmed February 21, 1978

# STEVEN JAMES SCHRECK, *Appellant,*
### *v.*
## CUPP, *Respondent.*
### (No. 95265, CA 8361)
575 P2d 662

J. Michael Alexander, Salem, argued the cause for appellant. With him on the brief was Brown, Burt & Swanson, P.C., Salem.

W. Benny Won, Assistant Attorney General, Salem, argued the cause for respondent. On the brief were James A. Redden, Attorney General, Al J. Laue, Solicitor General, and Kevin L. Mannix, Assistant Attorney General, Salem.

Before Schwab, Chief Judge, and Thornton and Buttler, Judges.

SCHWAB, C. J.

## SCHWAB, C. J.

Petitioner appeals from an order of the post-conviction court which denied him the relief he sought. The issues as framed by petitioner's second amended petition are:

### "VIII

"That Petitioner's imprisonment was and is illegal and the proceeding as set forth above resulted in the substantial denial of the Petitioner's rights as follows:

"A. That Petitioner was denied due process of law under the Fourteenth Amendment to the Constitution of the United States by reason of his conviction being based on his guilty plea, which was not knowingly voluntarily made.

"B. That Petitioner was denied his right to counsel under the Sixth and Fourteenth Amendments to the Constitution of the United States and Article I, Section 11 of the Constitution of the State of Oregon in that his counsel were incompetent for they failed to prepare an adequate defense.

### "IX

"That Petitioner was denied due process of law by the trial court's failure to allow him to withdraw his guilty plea prior to sentencing."

Petitioner and one Terrie Knight were charged with burglary. Ms. Knight retained an attorney who had previously represented her and shortly thereafter petitioner also retained him. That attorney associated another attorney and the two acted as co-counsel. Not guilty pleas were entered for both parties. After a considerable amount of plea bargaining which was not dispositive, Knight went to trial and was convicted. Prior to her sentencing, further discussions took place as a result of which the district attorney stated that if the defendant pled guilty, he would not recommend a prison sentence for Knight. The defendant thereafter entered a plea of guilty prior to the sentencing of Knight. The plea was accepted only after a thorough inquiry by the trial judge who concluded by admonishing the petitioner that "* * * once done this is a

[ 607 ]

permanent act and you can't change your mind." When petitioner responded that he so understood, the judge accepted his plea of guilty.

A few days later, after Knight had been given a sentence of probation, petitioner appeared for sentencing before a judge other than the one who had accepted his plea of guilty. When petitioner's case was called, the attorney who appeared with him presented a written motion on behalf of himself and co-counsel to withdraw as counsel for petitioner and requested that the sentencing be postponed. At the same time he indicated that petitioner wished to withdraw his guilty plea. The court stated it would grant the motion to withdraw as counsel after the sentencing, "* * * and then if the plea was not properly taken and should be set aside, then the sentence will be set aside, also, but he is in custody, and there aren't any motions before the Court, as far as I know, regarding the withdrawal of a guilty plea * * *."

Discussion followed with respect to the plea bargain, including a statement by the district attorney that it included "a sort of informal suggestion about what position we were going to take with respect to Terrie Knight" — namely, he would not ask for a prison term, that he had lived up to that understanding and was prepared to live up to the rest of the bargain. Petitioner was then sentenced. No further hearing was held.

■ The record amply supports the post-conviction judge's finding that the petitioner had not proven that his plea of guilty was not knowingly and voluntarily made. Indeed, the record strongly supports the contrary. This disposes of petitioner's contention contained in paragraph VIII A of petitioner's second amended petition, *supra.* The finding also disposes of paragraph VIII B. Counsels' trial preparation is not relevant when there is no showing that trial preparation or lack of it in any way influenced the entry of the guilty plea.

[ 608 ]

■■ As for paragraph IX of the petition, it is sufficient to note that only constitutional error is cognizable in a post-conviction proceeding — and it is not constitutional error for a sentencing judge to refuse to set aside a guilty plea when the judge who accepted the guilty plea was satisfied that the plea was knowingly, understandingly and voluntarily made and such has been determined by the post-conviction judge to be the actual fact. If the sentencing judge had heard petitioner's motion to withdraw his guilty plea, she would have heard evidence only on the issue of whether the plea was knowingly, understandingly and voluntarily made and then ruled on the motion accordingly. That is precisely what has happened in the post-conviction court. The petitioner has now had his day in court on his motion to withdraw his guilty plea. The fact that his motion had been denied does not make the ruling any less binding.

Affirmed.

**BUTTLER, J.,** dissenting.

I respectfully dissent.

This case involves a question of great concern to the bench and bar, as well as to petitioner: whether the existence of a substantial possibility of a conflict of interest resulting from the joint representation of codefendants in criminal proceedings is a basis, as a matter of law, for timely withdrawal of a guilty plea entered by one defendant in exchange for a promised advantage to his codefendant as part of a plea bargain.

If the answer is in the affirmative, as I think it must be, we should reverse, because, as pointed out below, the timing and manner of presenting the motion to withdraw the guilty plea involved an actual and patent conflict of interest to petitioner's prejudice.

The majority opinion does not deal with this question because it treats the case as one involving a guilty plea determined by the trial court to have been

voluntarily made; therefore, it could not have been "constitutional error" for the sentencing judge to refuse to permit its withdrawal. That disposition of the problem only seems plausible because the opinion does not state that there was, or even might have been, a conflict of interest. A more complete statement of the facts is necessary.

Petitioner and his paramour, Ms. Knight, were arrested and charged with a burglary. Ms. Knight retained an attorney in Salem who had represented her previously on other matters; petitioner also retained him shortly thereafter. That attorney associated an attorney in Lane County, where the proceedings were pending. Those two attorneys acted as co-counsel throughout the time involved herein. Petitioner and his paramour were indicted for first degree burglary; shortly thereafter, another indictment was handed down against petitioner, and the district attorney mentioned the possibility of a third indictment charging petitioner with being an ex-convict in possession of a firearm.

Not guilty pleas were entered for both parties, and Ms. Knight's case was set for trial first. Petitioner had been living with her and her three children, and expressed great concern over the possibility of her being convicted, sentenced to confinement and possibly losing her children. Prior to her trial, plea bargaining resulted in a proposal to settle both her and petitioner's cases by reducing the charge against Ms. Knight to a class A misdemeanor to which she would plead guilty, and petitioner would plead guilty to the first indictment against him and the district attorney would recommend that he receive a sentence of no more than fifteen years, would dismiss the second indictment and not pursue the third possible charge. According to one of the attorneys, there was no offer of probation for Ms. Knight as part of the bargain.

That bargain was rejected. Ms. Knight went to trial and was convicted. Prior to her sentencing, plea

bargaining discussions were renewed, as a result of which the same terms were offered petitioner, with the added statement by the district attorney that he would not recommend a prison sentence for Ms. Knight. Petitioner's attorneys recommended that he accept this proposal, and the matter was set for a change of plea on August 8, 1974. When the court convened, petitioner's attorney stated that he was ready, but "my client is not." He asked for, and was granted, "a moment," at the end of which he stated, "We're ready." A colloquy followed, during which the court, the district attorney, and petitioner's attorney discussed the plea bargain and petitioner's concern for Ms. Knight's sentencing. The judge made it clear that he would not condition petitioner's guilty plea on Ms. Knight's being dealt with "less harshly than otherwise." After fifteen minutes of discussion, petitioner's attorney advised the court that his client "feels a little bit under pressure" and that "[t]here's no way I'd like right now to be part of a guilty plea."

Court resumed after a forty-minute recess; counsel then announced that petitioner desired to change his plea, setting forth the conditions, stated above, of his doing so. There followed a lengthy colloquy between the judge, counsel and petitioner, during which the judge stated that he thought it was "an extremely hazardous situation so far as the stability of this plea is concerned in future years when the evidence plainly shows his great concern at this time is with the disposition of a codefendant and one of the opposite sex." He then stated he would not accept a guilty plea unless petitioner answered numerous questions concerning the alleged crime. The court then asked petitioner if he had anything further to say, to which he responded: "No, it would just stir up another conflict." Immediately prior to asking petitioner how he pled to the indictment, the judge asked petitioner if he understood that "once done this is a permanent act and you can't change your mind." Petitioner responded that he did, and then pled guilty.

A few days later, but before Ms. Knight was sentenced, it is agreed that petitioner told his attorney he wanted to withdraw his guilty plea. His attorney states, however, that he was not asked to file a motion to withdraw the plea, and that he told petitioner if such a motion were filed another attorney would have to file it because "I had a conflict going in and withdrawing the plea on the grounds of my own incompetence."

Nothing further was done for about two weeks when Ms. Knight and petitioner were scheduled for sentencing the same day before a judge other than the one who had accepted petitioner's guilty plea. Ms. Knight was sentenced first, and was put on probation. Petitioner's case was called shortly thereafter, at which time his attorney presented a written motion on behalf of himself and co-counsel to withdraw as counsel for petitioner, and requested that sentencing be postponed. At the same time he advised the court that petitioner wished to withdraw his guilty plea. The court stated it would grant the motion to withdraw as counsel after the sentencing, "* * * and then if the plea was not properly taken and should be set aside, then the sentence will be set aside, also, but he is in custody, and there aren't any motions before the court, as far as I know, regarding the withdrawal of a guilty plea * * *."

Discussion followed with respect to the plea bargain, including a statement by the district attorney that it included "a sort of informal suggestion about what position we were going to take with respect to Terrie Knight" — namely, he would not ask for a prison term, that he had lived up to that understanding, and was prepared to live up to the rest of the bargain. Petitioner was then sentenced to ten years.

In this post-conviction proceeding, the trial court found that petitioner failed to establish by a preponderance of the evidence that his guilty plea was not knowingly and voluntarily made, but did not deal

specifically with the conflict of interest which existed with respect to co-counsel for petitioner and Ms. Knight. That failure might be explained by the fact that petitioner did not specifically allege that any of his claimed rights were denied by virtue of that fact. The substantial evidence on that point, however, was relevant to petitioner's allegation (paragraph IX) that he was denied due process of law by the trial court's failure to allow him to withdraw his guilty plea. While I agree with the majority that the petition is not as articulate as it might be, I think it fairly raises the question and we ought to decide it.[1] In my opinion, the trial court's finding that the evidence was insufficient to support the allegation of paragraph IX is not supported by the record.

Under ORS 135.365, the court may permit the withdrawal of a guilty plea at any time before judgment, and as a general proposition it is not an abuse of discretion to refuse leave to withdraw the plea if the defendant fully understood his rights, the nature of the charge against him, and the consequences of such a plea. *State v. Burnett,* 228 Or 556, 365 P2d 1060 (1961). Where, however, defense counsel gives erroneous advice, on the basis of which the defendant pleads guilty, the question becomes whether the guilty plea, *otherwise voluntary,* is vitiated because it was induced by ineffective or incompetent counsel. *Dorsey v. Cupp,* 12 Or App 604, 508 P2d 445 (1973).

The question here is more complex because I accept the trial court's findings that petitioner's original trial counsel was competent, but I am concerned with the effect of the conflict of interest which is inherent in any criminal case where the same attorney represents two persons indicted for the same or a related incident. The conflict becomes real and substantial when plea

---

[1] In *Gideon v. Wainwright,* 372 US 335, 83 S Ct 792, 9 L Ed2d 799, 93 ALR2d 733 (1963), the petition was handwritten in pencil and did not comply with several court rules; it was considered. *See* Lewis, *Gideon's Trumpet* (Random House, 1964), pp 4-5.

bargaining involving both indictees occurs. The advice given each client may be competent, sound advice, but by its very nature it is not the independent advice to which each is entitled. There is no realistic way of knowing the extent to which advice given one client is colored by the attorney's duty of loyalty to the other, and the attorney may, in all honesty, be unaware at the time of any coloration.

The problem here is in the effort to serve two masters in a matter where their interests are not identical throughout the period of representation. For example, in this case, isn't it highly probable independent counsel would have advised petitioner that he should not enter a guilty plea in order to obtain a probationary sentence for Ms. Knight? The record indicates that she probably would have been granted probation in any event in light of her lack of criminal record, to which the assistant district attorney referred at the hearing on petitioner's change of plea. Concededly, there might have been other reasons for petitioner to plead guilty, but the record is clear that his paramour's welfare was the overriding reason for his plea; it was also a concern to their joint counsel.

In this context, the question is not the voluntariness of the plea, but the effectiveness of counsel under the Sixth Amendment to the United States Constitution as applied to the states under the Fourteenth Amendment, and under Article I, § 11, of the Oregon Constitution. The requisite state action under the Fourteenth Amendment is found in the state's knowledge of the conflict of interest, engaging in plea bargaining involving both defendants, and in the court's knowledge of the conflict. *Alvarez v. Wainwright,* 522 F2d 100 (5th Cir 1975).

In *Glasser v. United States,* 315 US 60, 62 S Ct 457, 86 L Ed 680 (1942), the United States Supreme Court reversed the conviction of a defendant whose appointed attorney also represented a codefendant. In doing so, the court stated:

"* * * Here the court was advised of the possibility that conflicting interests might arise which would diminish Stewart's usefulness to Glasser. Nevertheless Stewart was appointed as Kretske's counsel. Our examination of the record leads to the conclusion that Stewart's representation of Glasser was not as effective as it might have been been if the appointment had not been made. We hold that the court thereby denied Glasser his right to have the effective assistance of counsel * * *." 315 US at 76.

Essentially the same thing may be said here: counsel's representation of petitioner was not as effective as it might have been if he had not been representing both defendants. It is not necessary, and I do not suggest, that we adopt a rule that every potential conflict gives rise to a *per se* violation of the right to effective counsel. The record here is clear that there was, at the very least, a substantial possibility of a conflict of interest, if not an actual one. Most of the cases which have considered the question have put an affirmative responsibility on the trial court,[2] at least when it becomes apparent there is a substantial possibility of an actual conflict of interest. In *United States v. Lawriw,* 568 F2d 98, 101 (8th Cir, 1977), the court said:

---

[2]The Second Circuit has held that a trial judge, when dealing with retained counsel, has the duty to inquire "when a potential conflict of interest arises." *Abraham v. United States,* 549 F2d 236 (2nd Cir 1977).

The Third Circuit has stated that defendants should be warned of the dangers of joint representation at the earliest opportunity. Moreover, "upon a showing of a possible conflict of interest or prejudice, however remote, we will regard joint representation as constitutionally defective." *Hart v. Davenport,* 478 F2d 203 (3rd Cir 1973).

The D.C. Circuit and First Circuit have imposed an affirmative duty of inquiry on trial judges. *Campbell v. United States,* 352 F2d 359 (DC Cir 1965), and *United States v. Foster,* 469 F2d 1 (4th Cir 1974). The Fourth Circuit also appears to require such an inquiry. *United States v. Truglio,* 493 F2d 574 (4th Cir 1974).

The Fifth, Sixth, Seventh and Ninth Circuits apparently do not require trial courts automatically to advise a defendant of the right to separate counsel. *See United States v. LaRiche,* 549 F2d 1088 (6th Cir 1977); *United States v. Mandell,* 525 F2d 671 (7th Cir 1975); and *United States v. Christopher,* 488 F2d 849 (9th Cir 1973).

[ 615 ]

"It has become increasingly apparent that dual representation is fraught with risk of conflict and should be approached with caution by the parties and by counsel. Recognizing this, we have said in this Circuit that responsibility for avoiding such risks lies heavily both with the trial court, see *U.S. v. Williams,* 429 F.2d 158, 161 (8th Cir.) *Cert. denied* 400 U.S. 947, 91 S. Ct. 255, 27 L.Ed 2d 253 (1970), and with counsel, *U.S. v. Valenzuela,* 521 F.2d 414, 416 n.1 (8th Cir. 1975). In *Williams* we held that such an inquiry was required of the trial court in cases involving appointed counsel. For reasons that will appear below we think this rule applies equally to retained counsel. * * *

"* * * * *

"* * * While the potential for prejudice is not so inherent as to require a per se rule of conflict, it is nonetheless sufficiently pervasive that only a minimal showing of conflict should be required to invoke constitutional protection. Thus, in most cases the question will not be so much whether a conflict existed, but whether the defendant effectively waived it."

The court in *Lawriw* went on to point out that the Minnesota Supreme Court recently adopted the following formulation:

"* * * 'The defendant must voluntarily and with full knowledge of the consequences decide on dual representation. The court should address each defendant personally and advise him of the potential danger of dual representation. The defendant should have an opportunity and be at liberty to question the trial court on the nature and consequences of dual representation and the entire procedure should be placed on the record for review. When satisfactory inquiry does not appear on the record, the burden shifts to the state to demonstrate beyond a reasonable doubt that a prejudicial conflict of interests did not exist.' *State v. Olsen,* 22 [— Minn. —, 258 NW2d 898, 907 (1977)]." 568 F2d at 104.

While the court, in light of its decision in *United States v. Valenzuela,* 521 F2d 414 (8th Cir 1975), declined to adopt a burden-shifting approach, it stated:

"We do, however, state that it is the duty of the trial court to make an inquiry similar to that required in *State*

[ 616 ]

*v. Olsen,* and we anticipate that without such an inquiry a finding of knowing and intelligent waiver will seldom, if ever, be sustained by this Court. * * * Considering the minimal showing needed to establish the substantial possibility of a conflict of interest, the importance of an adequate record to underpin a finding of waiver cannot be overstated. The administration of justice is best served by such an inquiry and we now require it. * * *" 568 F2d at 105.

The most that can be said in the case at bar is that the Salem attorney testified in this proceeding that he discussed the possibility of a conflict if he and his associated counsel represented petitioner and his paramour. However, he testified that he was not present when petitioner entered his guilty plea or when he was sentenced. It is not sufficient for counsel to advise of the mere possibility of a conflict; the facts and specific problems relating to the conflict must be explained each time a conflict of interest arises. In particular, the matter should have been discussed fully at the change of plea hearing, and the trial judge, knowing of the joint representation, should have inquired into the matter.

Accordingly, I would hold that petitioner did not knowingly and intelligently waive his right to effective counsel. It follows that if his desire to withdraw his guilty plea had been presented to the court when he first stated that desire, it would have been constitutional error to have refused the request.

The fact that the request to withdraw the plea was not made until after petitioner's codefendant was sentenced to probation per the plea bargain cannot change the result here, although the situation might well be different if petitioner had deliberately waited until the state had carried out its part of the plea bargain before he made his request. Here, it is clear that an actual and obvious conflict of interest pervaded the proceedings at the time Ms. Knight and petitioner were sentenced. Counsel waited until after his other client, Ms. Knight, was sentenced and put on

probation consistent with the plea bargain before he advised the court that petitioner wished to withdraw his guilty plea. At that point, in light of the plea bargain and the prosecuting attorney's statement that he had lived up to his bargain and was prepared to proceed with the remaining part of it, petitioner was prejudiced by the conflict of interest; his stated desire to withdraw his plea was doomed to failure. The record indicated that the trial judge failed even to consider the matter.

I would hold that the original trial court's refusal to consider petitioner's oral motion to withdraw his guilty plea was error, and that if the motion had been considered, it would have been an abuse of discretion to have denied him leave to withdraw that plea.

Therefore, I would reverse and remand the post-conviction trial court with instructions to remand to the original trial court to permit petitioner to withdraw his guilty plea and stand for trial.