## H. P. Norris v. The State.

No. 13261.   Delivered April 16, 1930.

Reported in 27 S. W. (2d) 246.

The opinion states the case.

*Levens, McWhorter & Howard* of Lubbock, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

MARTIN, JUDGE.—Offense, forgery; penalty, two years in the penitentiary.

This case was apparently tried upon the theory that the name signed to the alleged forged instrument was that of a fictitious person. The substance of the State's case against appellant is in brief as follows:

A Mr. Mullins approached prosecuting witness, Roy, in the town of Crosbyton and endeavored to buy from him two cows. They failed to trade at this meeting. Appellant was standing nearby. Mullins and Roy afterwards met on the street and traded, Mullins

giving to Roy a check for the cows in the sum of $111.25, dated Lubbock, Texas, June 14, 1929, drawn on the Lubbock National Bank, payable to the order of C. O. Roy, and signed by *J. M. Mullins.* The initials of the party giving this check were B. C., not J. M. Appellant was nearby when this check was given, his exact whereabouts being somewhat uncertain. Roy testified: "I do not know of my own knowledge that Mr. Norris was there present and within hearing distance of the conversation that was taking place between Mr. Mullins and myself at the time the check was written out or not. I couldn't say that he was." Roy further testified that he knew at the time that there were some Mullins boys who were cattle traders at Lubbock and had been ten or fifteen years in that business. "I was trading with Mr. Mullins on his name, on the fact that I knew the Mullins brothers. I was not trading with Mr. Mullins on any representations that Mr. Norris made to me. I did not know Mr. Norris." It further appears that the two cows purchased were delivered that same day and hauled off in a trailer, the appellant, Norris, driving the car at the time and assisting in their loading. Testimony of other joint transactions between appellant and Mullins seems unnecessary to here detail. The above check was apparently turned in to the bank at Crosbyton. Roy testified that he never received any money on same. There is no testimony in this record that the check in question ever left Crosbyton, ever arrived at Lubbock or was ever presented for payment at the Lubbock bank. There is an entire absence of testimony that J. M. Mullins was not at the time in fact a customer of the Lubbock National Bank, nor is there any evidence that he was unknown in Lubbock, though such testimony was easily available to the State, since we judicially know that the town of Lubbock is near the town of Crosbyton, each being county seats.

We regard this testimony as going no further than to merely show that a check was given to prosecuting witness, the initials of the drawer of same being different from the initials of the man who delivered the check and that the payee named in the check for some unexplained reason failed to get any money on same. Assuming that appellant was present and knew of the unlawful intent of Mullins and aided him in such way as to make him a principal, still the offense of forgery is not proven for the reasons which we give below. That the signing of a fictitious name with intent to defraud may constitute forgery has been ofttimes decided. Barnwell v. State, 1 Tex. Crim. App. 748; Feeny v. State, 62 Tex. Crim. Rep.

585; Branch's P. C., Sec. 1410; Lyman v. State, 9 A. L. R. 407, where an imposing array of authorities on the subject are collated. Art. 979, P. C., in defining forgery expressly provides as one of its elements that the alleged forged instrument must be made "without lawful authority." This lack of authority may be proven, of course, by circumstances, as well as by direct evidence. As a circumstance of prime importance in showing the existence of this indispensable statutory element the State may prove the purported maker to be a fictitious person. It has been stated in Barnwell v. State, 1 Tex. Crim. App. 748:

"Mr. Greenleaf says: '* * * So, where the prisoner obtained money from a person for a check drawn by G. A. upon a certain banking-house, and it appeared that no person of that name kept an account or had funds or credit in that house, this was held sufficient prima facie evidence that G. A. was a fictitious person until the prisoner should produce him or give other sufficient explanatory proof to the contrary.' "

Without expressly approving the correctness of this as a rule in all cases it will be noted here that the State in this case made no attempt to even prove that no person by the name of J. M. Mullins kept an account or had funds or credits in the Lubbock bank or that the check in question ever was seen by such bank.

Instead the District Attorney in his closing argument to the jury made the following statement:

"Gentlemen of the Jury, I have diligently tried to find J. M. Mullins. I could not find any such person as J. M. Mullins in this county or Lubbock County. I tell you there is no such person as J. M. Mullins. He is a fictitious person."

What has already been said makes it plain that this statement was not based on any evidence and was the ex parte and unsworn statement of a fact which the State needed but did not have. This was objected to and a written request to disregard same presented, which was refused. This was error. Hunnicutt v. State, 18 Tex. Crim. Rep. 523; Branch's P. C., Sec. 364.

In the motion for new trial appellant alleges as a ground therefor the discovery of new evidence to the effect that J. M. Mullins was in fact living in Lubbock County, was a brother of B. C. Mullins, who gave the check; that they traded together; that B. C. Mullins had been confined in jail and in the hospital and that the officers had refused to permit appellant to talk to B. C. Mullins before the trial and he was not able to ascertain these facts prior to his

trial. In view of the allegations as to the refusal of the officers to permit any consultation with B. C. Mullins, this matter, if considered, would present a grave question, but in view of the disposition we make of the case, we deem it unnecessary to pass on same.

For the errors above discussed, the judgment is reversed and cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.