Argued at Pendleton May 6; affirmed June 16; rehearing denied September 15, 1931

## STATE *v.* HARDIN

(300 P. 347, 2 P. (2d) 1107)

*William G. Smith,* of Portland (Collier, Collier & Bernard, of Portland, and Gavin & Gavin, of The Dalles, on the brief), for appellant.

*Francis V. Galloway,* District Attorney, of The Dalles (I. H. Van Winkle, Attorney General, on the brief), for the State.

BELT, J. Defendant was convicted of the crime of forging the name of Tom Lorenzen as an endorsement on a warehouse receipt issued by the Boyd Union Elevator Company located in Wasco county, Oregon, to cover the storage of wheat owned by Tom Lorenzen. At the conclusion of the evidence the defendant moved for a directed verdict of acquittal for the reason, among others, that there was no evidence tending to show that the defendant signed the name of Tom Lorenzen to the warehouse receipt or that he had caused the same to be signed thereto.

■ We think a brief summary of the evidence will suffice to show that no error was made in the denial of this motion. The defendant for several years had been a dealer in grain in Wasco county and had engaged in numerous business transactions with Tom Lorenzen who operated a large wheat ranch. In August, 1930, Lorenzen employed Harry McAllister to haul a certain part of his wheat crop to the Boyd Union Elevator Company for storage. When the last lot was hauled the manager of the warehouse company, John Godknecht, delivered seven warehouse receipts to McAllister on Friday afternoon, August 15, 1930. Godknecht testified that, at such time, none of the receipts were endorsed. McAllister corroborated Godknecht as to the delivery of the warehouse receipts and further testified that, in accordance with the instructions of the wife of Tom Lorenzen, who for many years had been acting as her husband's agent in the sale of his wheat crops, he delivered the receipts to the defend-

ant at his office in the city of The Dalles, Oregon, on the next day (Saturday) or on the Monday following— the 18th day of August. McAllister testified that, from the time these receipts were delivered to him by the manager of the warehouse, he retained exclusive possession of them and that when he turned them over to the defendant they bore no endorsements. The defendant admits having received the receipts but states positively that, at the time they were delivered to him, they had the endorsement of Tom Lorenzen on the back thereof. He avers that he never signed such name to the receipts nor authorized any person so to do. Tom Lorenzen testified that he did not endorse the receipts and his wife also testified that she did not sign them nor authorize any person so to do. As to why the receipts were delivered to the defendant, Mr. Lorenzen, on cross-examination, stated "We were going to sell the grain to him." Further, in response to the question, "The receipts were delivered so that he could transfer that grain, isn't that true?" Lorenzen answered, "No, sir, so he could have the receipts there.  *  *  *  Left the receipts there; whenever we want to sell the grain they was there  *  *  *." Considering other parts of the testimony of Lorenzen and his wife relative to the reason for the delivery of the receipts to the defendant, we think it is quite apparent that the same were left with the defendant to be available when they decided to sell the wheat. Godknecht further testified that on August 25, 1930, he received through the mail from the defendant the seven warehouse receipts, including the one upon which the indictment is based, together with the shipping invoice and a check for $22.40 covering storage on the wheat, and that, on August 27, 1930, by the direction of the

defendant, he shipped the wheat to the Portland Grain Company at Portland, Oregon. It was stipulated that the defendant received the money from the sale of the wheat. It is also well to observe that there were introduced in evidence, for comparison with the alleged forged endorsement, several instruments admitted to have been executed by the defendant.

It is the contention of the defendant that such evidence is not sufficient to show that defendant committed the crime of forgery and that the case of the state is further fatally defective in that it does not appear that the defendant was not authorized to sign the name of Tom Lorenzen. Defendant concedes that such evidence might tend to show a motive and an opportunity for the commission of the crime, but contends that it was incumbent upon the state to go further and show in fact that defendant committed the crime. In other words, defendant asserts that the state has failed to establish the corpus delicti.

▇▇▇ While it was necessary for the state to show that the defendant signed the name of Tom Lorenzen to the warehouse receipt and that he did so without authority and with criminal intent, it was not obliged to rely upon direct proof. The jury is permitted to draw reasonable inferences from facts proven. The state was entitled to show by circumstantial evidence that defendant signed the name of Tom Lorenzen without authority: *Brown v. State,* 115 Neb. 325 (212 N. W. 625); *Norris v. State,* (Tex.) 27 S. W. (2d) 246; 26 C. J. 959. Evidence was offered to show exclusive possession of the receipts by the defendant from the time they were delivered to him by McAllister until delivered to the warehouseman in order to dispose of the wheat. No other person had an opportunity to sign Lorenzen's

name to the receipts. If, during such time, they had been handled by other persons there would be more force to the argument advanced. See Wigmore on Evidence, vol. 1, § 131, wherein the learned author discusses the weight of evidence showing exclusive opportunity to commit crime as distinguished from equal opportunity. Furthermore, the testimony of Mrs. Lorenzen, concerning a conversation with defendant in the presence of her husband, relative to the alleged forgery, tends strongly to prove that defendant had no authority from Tom Lorenzen to sign his name to the receipts. Relative to this conversation, Mrs. Lorenzen testified:

"I asked him—I said, you know well enough I did not tell you that you could have that wheat that is in the Boyd elevator. Why did you sign those receipts for it and why did you try to imitate my handwriting? Well, he said—he says, wasn't those receipts signed when they come into his office, and I said, no, they were not. He said—when I asked him why he signed those receipts, well, he said, I don't know as I did. I says, why did you try to imitate my handwriting. He says, I did not try to imitate nobody's handwriting. That was about the substance of it, all there was to it."

Notwithstanding the testimony of defendant in the lower court that he did not sign the receipts, he now argues that the judgment should be reversed for the reason that there was no evidence tending to show that Lorenzen did not authorize him to do so. These are, indeed, inconsistent theories. In view of the conversation as above set forth, we think the jury might reasonably infer that Lorenzen did not authorize the defendant to sign his name.

■ The instructions of the court have been carefully examined and we see no error. All the requested instructions to which defendant was entitled were

covered by the court in its general charge. The jury was specifically instructed that, in addition to the evidence of mere opportunity to commit the crime of forgery and motive therefor, the state must establish beyond a reasonable doubt that the defendant did commit the crime as charged in the indictment.

Finding no error in the record, it follows that the judgment of conviction is affirmed.

ROSSMAN and KELLY, JJ., not sitting.

---

Petition for rehearing denied September 15, 1931

### ON PETITION FOR REHEARING
(2 P. (2d) 1107)

■ BELT, J. In a petition for rehearing, defendant sets forth, as ground for reversal of the judgment of conviction, some affidavits relative to newly discovered evidence obtained since appeal. We can review only the record made in the trial court. It must be confessed, however, that, if the statements contained in the affidavits are true, there is doubt as to the guilt of the defendant. Since there is no error in the record which would warrant a reversal of the judgment, the matter might well be submitted to the governor for consideration.

The petition for rehearing is denied.