Argued June 9, affirmed October 20, 1965

# STATE OF OREGON *v.* ABEL
406 P. 2d 902

*William V. Deatherage,* Medford, argued the cause and filed briefs for appellant.

*Justin M. Smith,* Deputy District Attorney, Medford, argued the cause for respondent. With him on the brief was Thomas J. Owens, District Attorney.

Before McAllister, Chief Justice, and Sloan, Goodwin, Holman and Lusk, Justices.

LUSK, J.

Defendant has appealed from a judgment of conviction of the crime of forgery. The indictment charged that on June 3, 1963, he forged the name of Francis A. Krouse to a check for $50 drawn on the First National Bank of Oregon, Medford Branch, and made payable to "Big Y Shopping Center."

The defendant's brief contains 12 assignments

of error, only two of which are based on objections or requests for rulings properly and timely made by counsel at the trial. Nevertheless, it is claimed by counsel for defendant that this court is "required" to review these alleged errors "to guarantee due process to the accused." This might be true in a case where the conviction is not supported by a scintilla of evidence as in *State v. Moore,* 194 Or 232, 242, 241 P2d 455, upon which the defendant relies. But it is not generally true and, notwithstanding recent decisions of the courts manifesting a high degree of sensitivity to claimed violations of the constitutional rights of persons accused of crime, it is still the rule in this state in criminal as in civil cases that "a question not raised and preserved in the trial court will not be considered on appeal:" *State v. Braley,* 224 Or 1, 9, 355 P2d 467. The rule is relaxed in exceptional circumstances, particularly in what were formerly capital cases where "the court, upon an examination of the entire record, can say that the error is manifest and that the ends of justice will not otherwise be satisfied:" *State v. Avent,* 209 Or 181, 183, 302 P2d 549.

Nor is the case any different because the defendant is an indigent represented by court appointed counsel.[1] The common complaint of the convicted defendant on appeal that he has been denied due process of law because of alleged errors committed on the trial is, in most instances, without any justification whatsoever. It is blowing up errors of judgment into a

---

[1] Different attorneys represented the defendant in the trial court and in this court. Both were appointed. Both exhibited ability and resourcefulness.

denial of constitutional rights.② This misconception is not confined to Oregon and we think it worthwhile to quote what other courts have said upon the subject:

> "One who asserts that his attorney did not provide legal representation adequate to meet the requirements of the Sixth Amendment has a heavy burden to sustain. This court has repeatedly held that it is not enough to show merely that the assigned counsel was inexperienced; it is necessary to show that counsel was 'so incompetent or inefficient as to make the trial a farce or a mockery of justice.' Peek v. United States, 9 Cir., 321 F.2d 934, 944. The burden was not sustained here." *Reid v. United States* (CA 9 Or) 334 F2d 915, 919.

> "Although not specifically urged as a specification of error, appellant contends that he was denied his constitutional right to counsel. He bases this contention on the fact that his counsel failed to make a motion for acquittal at the end of the trial and would not allow appellant to take the stand and explain his possession of narcotics in order to overcome the presumption of section 174 of Title 21 of the U.S.C.

> "A careful reading of the record in this case convinces us that this contention has no merit. It is a stock complaint, after conviction, on the part of appellants who have been provided court appointed counsel."

---

② " 'If an appellate court is of the view that the trial court made an error of judgment in withdrawing a case from the jury, or in entering judgment for the defendant notwithstanding a plaintiff's verdict, a reversal [by a Court of Appeals] is no doubt called for; but we cannot see that anything is gained by blowing up that error of judgment into a denial of the constitutional right to a jury trial as guaranteed by the Seventh Amendment.' "

Smith v. Reinauer Oil Transport, Inc. (CA1 Mass) 256 F2d 646, 649, per Chief Judge Magruder, quoted with approval by Mr. Justice Frankfurter dissenting in Dick v. New York Life Ins. Co., 359 US 437, 456, 79 S Ct 921, 3 L Ed 2d 935, 947.

*Proffit v. United States* (CA 9 Or) 316 F2d 705, 707-708.

"As to the requirement under the Fourteenth Amendment, the services of counsel meet the requirements of the due process clause when he is a member in good standing at the bar, gives his client his complete loyalty, serves him in good faith to the best of his ability, and his service is of such character as to preserve the essential integrity of the proceedings as a trial in a court of justice. He is not required to be infallible. We know that some good lawyer gets beat in every law suit. He made some mistakes. The printed opinions that line the walls in our offices bear mute testimony to that fact. His client is entitled to a fair trial, not a perfect one."
*U. S. ex rel Weber v. Ragen* (CA 7 Ill) 176 F2d 579, 586, per Minton, J.

"We believe that modern requirements for the appointment of counsel for indigent defendants and provisions for their payment at public expense, such as we have in this State, contemplate full representation and do not contemplate that the trial court shall act as a kind of associate trial counsel for a defendant represented by court appointed counsel or that the defendant so represented shall be accorded some greater protection or leniency than that accorded a defendant represented at his own expense by counsel of his own choosing."
*Woodell v. State,* 223 Md 89, 95, 162 A2d 468, per Brune, C. J.

See, also, Effective Assistance of Counsel, 49 Va L Rev 1531, 1540-1541.

The facts of this case are as follows: Mr. and Mrs. Francis A. Krouse, residents of Grants Pass, had a commercial account in the First National Bank of Oregon, Medford Branch. On May 29, 1963, Mrs. Krouse

lost her checkbook while shopping in the Oregon Food Store in Grants Pass. The checkbook contained blank checks of the bank, on the face of which were printed the names and address of Mr. and Mrs. Krouse. They are known as "personalized" checks. The checkbook came into the hands of the defendant, who, on June 3, 1963, purchased three pairs of cowboy boots at Big Y Shopping Center in Medford. The cost of the boots was $44.85. Defendant paid for the boots with a check taken from the checkbook for $50 to which he forged the name of Francis A. Krouse. He was given the balance over the purchase price in cash. This is the transaction alleged in the indictment.

On June 2, 3, and 4, the defendant forged Mr. Krouse's name to 14 other similar checks, all of which were received in evidence without objection. As to some of them the defendant claims that there is no evidence that he passed them and, therefore, they were improperly admitted. All the checks were passed in the course of the peregrinations of the defendant and two companions (the Oden twins) between Grants Pass and Medford, during which they visited numerous taverns and consumed copious quantities of beer and other intoxicating liquors. The testimony of the victims of the forged checks was uniformly to the effect that the defendant was not drunk, though, according to some of them, he appeared to have been drinking. The checkbook, according to the testimony of one of the twins, was obtained by the defendant from a woman referred to by the witness as "the big mamma," who demanded of the defendant $15 for it. The defendant told the twins that his name was Francis Krouse and he admonished them to introduce him as John or Francis if they ran into any of their friends.

Alexander Alvarez testified that on June third he sold his used Ford to the defendant and accepted the latter's check for $375 in payment. This was one of the forged checks. In compliance with Alvarez' request for identification the defendant produced the Krouse checkbook and disclosed "a slip of paper with the name and address on there, the address of Krouse."

The defendant took the stand. He neither denied nor affirmed that he signed and passed the checks. He testified that he went into a "void" in a tavern on June 1, 1963, and did not wake up until June fifth, when he found himself in an automobile on the Green Spring Mountain enroute to Reno to be married. His intended wife was also in the car and another couple. They proceeded on to Reno where the marriage was celebrated. He claimed that he remembered nothing that occurred after June first until he woke up on Green Spring Mountain. He testified that in 1930 while contesting in a rodeo he was kicked by a horse and sustained a skull fracture; that ever since he had taken barbiturates and a drug called Amsec to avoid epileptic seizures; that at times he would "go into a complete void and don't fall down or anything like that. I may even walk"; that after coming out of such a seizure he would have no recollection of what had occurred during the seizure; that as long as he stayed on the medicines he could control the seizures to a great extent; but if he mixed alcohol and the medicines it was "a complete void." Referring to his condition in the first few days of June, 1963, he was asked by his counsel: "Now, Mr. Abel, were you in a sort of a blackout or void at this time or were you drunk?" He answered: "I cannot say there, for that period of time is a total blank to me. Whether I was drunk or

whether I was in a void from seizure, I do not know."
He also testified that he traced his void condition to
a "foreign drug" which, he suspected, one of the twins
had put in his beer, but he admitted that he did not
see anything placed in his drink—that was "hearsay
afterwards."

Dr. Harry Danielson, a psychiatrist, who examined
the defendant while he was awaiting trial for the
purpose of making a determination for the court as to
whether the defendant was able to understand the pro-
ceedings and assist in his own defense and found that
he was so able, testified as a witness for the defense.
It is sufficient to say of his testimony that it lends
no support to the theory of the defense (hereinafter
discussed) that the defendant's condition during the
period in question was due to the use of drugs.

▅▅▅ Defendant's first assignment of error is based
on the court's failure to direct a verdict of acquittal.
It is urged that the state did not prove that defendant
had no authority to sign Mr. Krouse's name to the
check described in the indictment. Want of such au-
thority is an essential element of the crime charged:
*State v. Fitzgerald,* 186 Or 301, 304, 205 P2d 549, 206
P2d 808; *State v. Hardin,* 137 Or 250, 253, 300 P 347,
2 P2d 1107; but the proof may be circumstantial:
*State v. Hardin,* supra, 137 Or at 253. Here the evi-
dence that defendant bought the checkbook from a
woman for $15, that he told the Oden twins that his
name was Francis Krouse and that he should be intro-
duced as John or Francis, and that, in effect, he identi-
fied himself to the witness Alvarez as Francis Krouse
for the purpose of inducing Alvarez to accept a check
in payment of the used car, warrants a reasonable
inference that the defendant had no authority to sign
the name of Francis Krouse to any check.

There was no motion for a directed verdict. We have reviewed the alleged error only because it involves the question of sufficiency of the proof of the corpus delicti.

■ We decline to review several assignments of error based on the admission in evidence of other checks to which the defendant signed the name of Francis A. Krouse and photo enlargements of such checks used by a handwriting expert called by the state, for the reason that these exhibits were admitted after counsel for the defendant had expressly stated that he had no objection to them.

■ The court instructed the jury, in accordance with ORS 136.400, that no act committed while in a state of voluntary intoxication shall be deemed less criminal by reason of the defendant having been in such condition but that the fact that the defendant was intoxicated at the time of the alleged act could be considered by the jury in determining purpose, motive, or intent. At the conclusion of all the instructions counsel for the defendant requested that the court instruct the jury "on the relationship of drugs or barbiturates on the ability to form the intent, somewhat paralleling what Your Honor instructed regarding intoxication." The court refused the request stating that the instruction given, which (like the statute) did not mention intoxicating liquors, was broad enough to cover intoxication caused by drugs, and further that the request was not in accordance with the rules of the court which require that requests for instructions be submitted in writing prior to the commencement of argument. The ruling is assigned as error. We express no opinion upon the validity of the court's first reason nor upon the question, which has been argued in the briefs, as to whether the statute covers intoxi-

cation caused by drugs. Consideration of the latter question, a new one in this state, may appropriately be reserved for a case where it is squarely presented. We agree with the court's second reason for refusing the request. The rule of court referred to is not only a reasonable one, but it accords with the general rule as enunciated in *State v. Nodine,* 198 Or 679, 687, 259 P2d 1056: "Considerations of orderly procedure and of fairness to the state and the trial judge suggest that the matter be brought to the attention of the judge and of opposing counsel before the commencement of the charge." In the *Nodine* case, which was a prosecution for first degree murder, we allowed an exception to the rule, but there are no circumstances present in this case which call for a similar course. There was no error in the ruling.

██ Two remaining assignments of error grow out of objections by the defendant to the final argument of the district attorney. The district attorney read to the jury from the notes he took of the testimony of Dr. Danielson. The objection was on the ground that a report made by Dr. Danielson and to which he referred while testifying had not been received in evidence. What the district attorney read to the jury was practically *verbatim* the witness' testimony as it appears in the transcript. We are, therefore, unable to see how any possible prejudice to the defendant could result from the ruling or that the judge, as the defendant claims, made a prejudicial comment in the presence of the jury when he stated, in effect, that the district attorney was doing no more than relating correctly what Dr. Danielson had testified to.

The defendant had a fair trial and the judgment is affirmed.