Argued and submitted October 7, affirmed December 9, 1980,
rehearing denied January 13, 1981

## STATE OF OREGON,
### *Respondent,*
### *v.*
## RANDY LEE STROUP,
### *Petitioner.*

## (NO. 78-32999, CA 16139, SC 27010)

620 P2d 1359

Elizabeth A. Baldwin, Staff Attorney, Public Defender Services of Lane County, Inc., Eugene, argued the cause and filed the brief for petitioner.

John C. Bradley, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

TONGUE, J.

**TONGUE, J.**

Defendant was convicted of driving a motor vehicle while his operator's license had been suspended, in violation of ORS 487.560(1).[1] He appealed to the Court of Appeals contending, among other things, that the evidence was insufficient to support his conviction in that the state had failed to prove that the Motor Vehicle Division had previously mailed to the defendant notice that his operator's license had been suspended, as required by its own rules, by ORS 482.570,[2] and also as a matter of constitutional due process.

In response, it was contended by the state that under the provisions of ORS 487.560(1) it had the burden to prove in its opening case only (1) that defendant was driving upon a highway and (2) that at the time his license was suspended; that under the provisions of ORS 487.560(2)(b) it is an affirmative defense, to be proved by defendant, that he had not received notice of his suspension,[3] and that, in any event, requirements of due process

---

[1] ORS 487.560(1) provides:

"A person commits the crime of driving while suspended if he drives a motor vehicle upon a highway during a period when his license or permit to, drive a motor vehicle or his right to apply for a license to drive a motor vehicle in this state has been suspended by a court or by the division * * *."

[2] ORS 482.570 provides:

"When the division, as authorized or required, suspends, revokes or cancels a license or the right to apply for a license to operate motor vehicles, it shall give notice of such action to the person whose license or right is affected. The notice shall state the nature and reason for the action and, in the case of a suspension, whether it was ordered by a court. Service of the notice is accomplished either by mailing the notice by certified mail restricted delivery, return receipt requested, to the person's address as shown by division records, or, by personal service in the same manner as a summons is served in an action at law."

[3] ORS 487.560(2) provides:

"In a prosecution under subsection (1) of this section, it is an affirmative defense that:

"* * * * *

"(b) The defendant had not received notice of his suspension or revocation as required by ORS 482.570 or in the manner provided in paragraph (c) of subsection (3) of this section."

were satisfied because the license of this defendant had been suspended for "failure to appear in court" under ORS 484.210[4] and after receiving notice by a Uniform Traffic Citation, as then required by ORS 484.150(7), to the effect that if he failed to appear in court his license was subject to suspension.[5] The Court of Appeals affirmed defendant's conviction without opinion. We allowed defendant's petition for review because of the importance of the questions raised by these conflicting contentions.

---

[4] ORS 484.210 provides:

"(1) If the defendant requests a hearing, or if pursuant to ORS 484.220 the court directs that a hearing be had, the court shall fix a date and time for the hearing and, unless notice is waived, shall at least five days in advance of the hearing mail to the defendant notice of the date and time so fixed. The notice shall set forth a warning that for failure to appear for the hearing the defendant's license is subject to suspension unless bail is deposited in the amount set in the summons.

"(2) If the defendant fails to appear for the hearing at the time and place fixed by the court and no bail has been deposited, the court may notify the Motor Vehicles Division of the defendant's failure to appear. In the notification the court shall certify that notice was given the defendant as prescribed by subsection (1) of this section and that the defendant failed to appear for the hearing. Upon receipt of such notification, together with a fee of $5, the division shall suspend the defendant's license for an indefinite period. If the defendant thereafter makes his appearance before the court, the court shall notify the division of the fact and the division shall thereupon terminate the suspension ordered pursuant to this subsection. Notifications by the court to the division shall be in a form prescribed by the division. A suspension ordered under this section shall not be used by the division in any subsequent consideration of the defendant's driving record under ORS 482.450.

"(3) As used in this section, 'license' has the meaning given that term by ORS 482.010."

[5] As of the time of defendant's arrest in 1978, ORS 484.150(7) provided:

"The summons shall also contain a notice to the person cited that the complaint will be filed. The reverse side of the summons shall contain the following:

"(a) A form substantially as follows:

"READ CAREFULLY
"You must appear in court at the time mentioned in this citation if you are charged with any of the following offenses:

"1. Reckless driving.

"2. Driving while under the influence of intoxicants.

"3. Leaving the scene of an accident.

"4. Operating a motor vehicle while your driver's license was suspended or revoked.

## *The Facts of Record*

Prior to trial defendant gave the state notice in writing of his intention to rely on the defense of lack of notice of suspension. A jury was waived and the case was tried to the court. In its opening case the state offered the testimony of a police officer who testified that on October 7, 1978, he observed defendant slumped over the steering wheel of a car in a parking lot; that he asked defendant for identification, and that defendant then produced an expired driver's license with an incorrect address.

A tape recording of an exchange between the defendant and the officer was admitted into evidence in the

---

"5. Attempting to flee or elude a police officer.

"If you are charged with any OTHER offense, you MUST do ONE of the following:

"1. Appear in court at the time mentioned in this summons and request a hearing. The court will then set a time for a hearing.

"2. Mail to the court this summons, together with a check or money order in the amount of the bail indicated on the other side of this summons and tell the court you request a hearing. This summons and the bail must reach the court before the time when this summons requires you to appear in court. If you don't want a hearing, but wish to explain your side, send your explanation with the summons and bail. The court will then consider your explanation and may forfeit your bail, or part of it, on the basis of your explanation and what the officer tells the court.

"3. Sign the plea of guilty below and send this summons to the court, together with check or money order in the amount of bail indicated on the other side of this summons. If you wish to explain your side, you may send your explanation with guilty plea, summons and bail.

"This summons and the bail must reach the court before the time when this summons requires you to appear in court.

"NOTE: If you have already given bail or other security for your appearance, proceed as mentioned above but do not send in any additional sum as bail. For the purpose of determining whether grounds exist for revoking or suspending your operator's or chauffeur's license, an unvacated forfeiture of bail equals a conviction.

"IF YOU FAIL TO COMPLY WITH THESE INSTRUCTIONS, THE COURT IS AUTHORIZED TO ISSUE A WARRANT FOR YOUR ARREST OR BY NOTICE TO THE MOTOR VEHICLE DIVISION TO CAUSE YOUR OPERATOR'S LICENSE TO BE SUSPENDED, OR BOTH.

"THE COURT MAY IN ANY CASE, AFTER NOTICE, REQUIRE YOU TO APPEAR FOR A HEARING."

state's case in chief in which the officer asked defendant if he had been receiving his mail; that upon being told "Yeah" the officer asked defendant if he was "aware that (his) license (was) suspended," and that defendant said "No." The defendant told the officer that he had moved from Springfield to Eugene in March or April (1978); that he "just never got around to" having the address changed on his license and that the reason why he had not done so was that he had been working six to seven days a week. It was stipulated that defendant had been driving on a public street.

The state offered in evidence a certified copy of the order of suspension, which was dated August 3, 1978, and stated that defendant's license was "suspended, effective (August 23, 1978) for an indefinite period * * * based upon * * * failure to appear in court," and that "You may request a hearing on this suspension order before a representative of the Motor Vehicles Division." The certificate attached to the copy certified not only that it was a true copy, but that "Our records reveal that this was in full effect on 10-07-78 and was mailed to the official address of record as recorded on the Motor Vehicle Division records." Defendant's address, as stated in the order, was "4980 Main St., Gen. Del., Springfield, Oregon, 97477." Defendant objected to the suspension order on the ground that no evidence had been offered by the state to show that it had been mailed as required by ORS 482.570.[6] That objection was overruled.

The state also offered in evidence a mailing envelope to show that the suspension order had been mailed to defendant's address as shown on that order. Defendant objected, challenging the correctness of the address. The court then ruled that the exhibit was not relevant until the defendant put on his affirmative defense that he had not received notice of the suspension. The state then withdrew that exhibit.

When the state rested, defendant moved for a judgment of acquittal on the ground that there was no evidence that the suspension order had been mailed to defendant as required by agency rule, statute, and due process and upon

---

[6] For the provisions of ORS 482.570, see note 2.

the ground that ORS 487.560(2) was unconstitutional. That motion was denied.

Defendant's wife then testified that she and the defendant had never "had an address of 4980 Main Street, *Gen. Del.,* Springfield, Ore.," as shown on the suspension order. She admitted, however, that defendant had lived at 4980 Main Street in Springfield, Oregon.

Defendant also offered in evidence a motor vehicle registration in defendant's name showing an address of 4980 Main Street, Springfield, Oregon, 97477 (without the reference to General Delivery). The court sustained an objection by the state on the ground of relevance. Defendant himself did not testify.

The trial court found the defendant to be guilty, and held that the affirmative defense had not been proved. Defendant then filed a Motion in Arrest of Judgment, which was denied.

## Defendant's Contentions

Defendant contends that a suspension of a driver's license under ORS 487.560 is not valid until notice has been mailed as required by ORS 482.570. Defendant also contends that proof of suspension is necessary in order for the state to prove its case in chief; that failure of the state to prove the mailing of notice means that it has not proved an element necessary for the crime of "driving while suspended" and that the defendant must therefore be found not guilty.

Defendant urges three separate grounds to support those contentions: (1) The Motor Vehicles Division must comply with its agency rules, which require notice; (2) the Motor Vehicles Division must comply with statutory provisions governing it, which require the mailing of notice of a suspension and failure to do so makes agency action invalid; and (3) due process requires that notice of a suspension be mailed before a suspension is valid.[7]

---

[7] Defendant also made some other related contentions, as discussed separately below.

## 1. *No Agency Rules Require Notice of the Entry of an Order of Suspension Before the Suspension is Valid*

■ Defendant contends that the Motor Vehicles Division regulations require that notice of suspension of a driver's license be provided and that failure to follow those rules makes a suspension invalid. However, the rule cited to us by defendant, OAR 137-03-000, does not require notice of the entry of an order of suspension. That rule provides:

"(1) A contested case exists whenever:

"(a) A constitutional provision or an agency enabling act requires a hearing upon the action, or

"(b) The agency has discretion to suspend or revoke a right or a privilege of a person, * * *.

"(c) The agency shall give notice to all parties in a contested case. * * *

"(d) The notice shall be served personally or by registered or certified mail."

The rule states only that notice of a contested hearing (one in which a right or privilege might be suspended or revoked) be given. In this case the driver's license of this defendant was suspended "for failure to appear" in court. In such a case notice that the driver's license might be suspended for "failure to appear" would be provided by the mailing of a notice pursuant to ORS 484.210, as discussed below.[8] The rule does not require the mailing of notice after the entry of an order of suspension and therefore does not support defendant's contention that notice of the entry of the order of suspension must be mailed to the driver in order for the suspension to be valid.

---

[8] For the provisions of ORS 484.210, see note 4. The order of suspension in this case states that defendant's license was suspended for "failure to appear in court." It does not state specifically that defendant was suspended for failure to appear at a hearing pursuant to the provisions of ORS 484.210. That defendant was suspended for failure to appear at such a hearing logically flows from ORS 484.220(2), however. ORS 484.220(2) provides:

"A recommendation for suspension of the defendant's driver's license shall not be made unless a hearing has been ordered, but the failure of the defendant to appear at the hearing shall not preclude such a recommendation."

2. *ORS 482.570 and 487.560 Do Not Require that Notice of the Entry of an Order of Suspension for Failure to Appear be Mailed Before a Suspension of a Driver's License is Valid*

Defendant also contends that an agency must act in accordance with statutes governing it; that failure to do so makes an agency action invalid, and that the statutory scheme as set out in ORS 487.560 and ORS 482.570 requires that notice of the entry of an order of suspension be mailed to the driver before an order suspending a driver's license can become a valid order. Thus, it is contended that *State v. Lawrence,* 36 Or App 733, 585 P2d 727 (1978), which appears to hold to the contrary, must be "overruled" because ORS 482.570 requires that when a driver's license is suspended by the Motor Vehicles Division it shall "give notice of such action" to the driver. Therefore, the failure of the Motor Vehicles Division to do so makes the suspension invalid, and it therefore follows that in order to prove a valid suspension under ORS 487.560 the state must prove the mailing of such a notice in accordance with ORS 482.570.

The principal case relied upon by defendant in support of this contention is *State v. Fogle,* 254 Or 268, 459 P2d 873 (1969). In that case this court held (at page 275) that the results of a breath test were inadmissible in a negligent homicide case arising out of an automobile accident because the state had not properly tested the equipment, as required by statute. By the same reasoning, it is contended that unless the Motor Vehicles Division proves compliance with ORS 482.570 the suspension of a driver's license should also be held invalid.

*Fogle,* however, is clearly distinguishable. The statute construed in that case, ORS 483.644(1), (2)(c), provided specifically that in order for the chemical analysis of a person's breath "to be valid" the equipment must be approved by the State Board of Health and that the Board shall make tests of the equipment every 60 days. There is no such language in ORS 487.560 stating that for an order suspending a driver's license "to be valid," notice of the suspension must be subsequently mailed pursuant to ORS 482.570.

Defendant also relies on *State v. Leathers,* 271 Or 236, 531 P2d 901 (1975), in which this court held (at page 240) that a sentence not "in conformity with its governing statute" is "without legal effect." Defendant contends, by analogy, that failure of the Motor Vehicles Division to comply with the mailing provisions of ORS 482.570 makes an order of suspension ineffective. Analysis of *Leathers* makes it clear, however, that it was the imposition of a sentence different from that allowed by statute that made the sentences invalid in that case, not failure to comply with notice requirements.

The more proper approach to the question of whether an order suspending a driver's license is invalid under ORS 487.560 unless the Motor Vehicles Division has complied with the mailing requirements of ORS 482.570, is to inquire whether the legislature intended that an order suspending a driver's license, if otherwise a valid order, must then be mailed to the driver before there can be a valid suspension of his license and that in a prosecution for driving with a suspended license the state must prove the mailing of the order of suspension as a part of its case in chief. *Cf. Anaconda Company v. Dept. of Rev.,* 278 Or 723, 727, 565 P2d 1084 (1977).

Defendant's strongest contention on this question is that the affirmative defense provided for by ORS 487.560(2)(b) concerns the defendant's failure to *receive* actual notice, while ORS 482.570 concerns the *mailing* of notice. Thus, defendant contends that the legislature must have intended that in order for there to be a valid suspension the state must prove mailing of notice, but that the defendant can still raise as an affirmative defense that he did not receive the notice and thus had no actual notice.

Although the statutes make such a distinction, we do not believe that it necessarily follows that the legislature intended that after the Motor Vehicles Division had entered an otherwise valid order suspending a driver's license, it must then mail a copy of that order to the driver

before the order is a valid order and that the state must prove this as a part of its case in chief.[9]

First of all, ORS 487.560 does not appear to require such a result. That statute defines the offense of "Driving while suspended" as follows:

"(1) A person commits the crime of driving while suspended if he drives a motor vehicle upon a highway during a period when his license or permit to drive a motor vehicle or his right to apply for a license to drive a motor vehicle in this state has been suspended by a court or by the division or revoked by the division or if he drives a motor vehicle outside the restrictions of a license issued under ORS 482.475 or 482.477."

In *State v. Lawrence, supra,* it was held by the Court of Appeals that:

"Under subsection (1) the state is required only to prove in its case in chief that 1) defendant was driving upon a highway and that 2) at the time his license was suspended." (36 Or App at 736)

---

[9] We have not overlooked defendant's reference to the Commentary on the Proposed Oregon Vehicle Code, § 92 (Committee on the Judiciary, January 1975). That Commentary notes that in proposing what is now ORS 487.560, the interim committee that prepared the code relied upon the recent Court of Appeals case of *State v. Buen,* 13 Or App 426, 509 P2d 865 (1973). Defendant contends that *Buen* requires the mailing of notice before a suspension is valid and therefore the legislature intended that ORS 487.560 also make that requirement.

This contention must be rejected for several reasons. First, *Buen* did not clearly state that notice must be mailed for a suspension to be valid, but stated that it is unnecessary to show actual notice in order to prove compliance with ORS 482.570, and that when statutory duties are followed, such as the requirement of the mailing of notice, it is presumed that due process has been complied with. Second, the Commentary's primary reliance upon *Buen* is to show that § 92 is consistent with *Buen* in allowing a conviction in some cases despite the defendant's assertion that he did not receive actual notice.

More importantly, legislative history subsequent to the preparation of the Commentary shows a contrary legislative intent than that contended by defendant. Mr. Donald Paillette, Project Director of the Proposed Oregon Vehicle Code, explained the provisions of the proposed code to the Judiciary Committee. On January 23, 1975, testifying before the Senate Judiciary Committee and explaining § 92, Mr. Paillette stated:

"What is being put forth in this section is that the burden is going to be shifted so long as there has been a showing that there is a suspension and that the defendant in question was driving at a time when he was suspended or revoked." Minutes, Senate Committee on Judiciary, January 23, 1975, page 5.

This supports the conclusion that the legislature intended that the state need only prove suspension and driving while suspended, rather than an intent that proof of mailing must also be shown by the state in its case in chief.

Although that decision is not controlling on this court, we believe it to be of some significance in support of that analysis that the only mention of notice in ORS 487.560 is in subsection (2)(b), which provides that the defendant may raise as an affirmative defense the fact that he has not received notice as required by ORS 482.570. Although perhaps not controlling, the fact that notice is not in any way mentioned in ORS 487.560 except as an affirmative defense is some indication that the legislature did not intend to require the state to prove the mailing of notice as a part of its case in chief in order to make a prima facie case to prove the offense of "driving while suspended."

We also find it significant that by making the failure to receive notice an affirmative defense, the legislature has by ORS 487.560(2)(b) provided defendants with a remedy when the state fails to comply with ORS 482.570. Had not such a defense been provided, it could be argued more effectively by the defendant that the mailing of notice was necessary for a valid suspension because otherwise the state could arbitrarily follow or ignore that section's notice requirements.

Furthermore, ORS 482.570, the notice statute so heavily relied upon by defendant, appears to make the subsequent giving of notice an act or "action" separate from that of the suspension of a driver's license. It provides:

"When the division * * * suspends * * * a license * * *, it shall give notice of *such action* to the person whose license * * * is affected." (Emphasis added)

The reference to "such action" is at least some further indication that the legislature considered the suspension of a driver's license to be an "action" complete in itself apart from the giving of "notice of such action."

A final indication of legislative intent that the subsequent mailing of notice pursuant to ORS 482.570 is not required for a valid order of suspension is that in cases such as this, involving persons whose licenses have been suspended for "failure to appear," the legislature had already provided for notice and a hearing sufficient to satisfy constitutional due process. As discussed below, due process may require that notice and hearing be provided before a driver's license is terminated. In the case of those suspended for failure to appear in court for a hearing on a traffic

offense, such notice and hearing is required by ORS 484.210. That section provides that prior to such a hearing the court is to mail notice to the defendant which shall "set forth a warning that for failure to appear for the hearing the defendant's license is subject to suspension unless bail is deposited in the amount set in the summons."

We believe it reasonable to assume that in view of these efforts by the legislature to provide a statutory scheme consistent with the due process requirements of notice and hearing *prior to* a license being suspended, the legislature did not also intend that the validity of an order suspending a driver's license be dependent also upon notice to the driver *after* his license has been suspended. Such an additional requirement would appear to be both constitutionally unnecessary and also an unnecessary duplication of effort.

■ In our opinion, it is more reasonable to conclude that the notice and hearing provided by ORS 484.210 is a provision intended by the legislature to satisfy constitutional requirements of due process before such a driver's license is suspended, at least in cases involving persons suspended for "failure to appear," as in this case, and that the subsequent mailing of a copy of such an order of suspension was not intended by the legislature to be required for the order of suspension to be valid. For these reasons, we do not interpret these statutes, including ORS 487.560(1), to require the state to prove the mailing of notice under ORS 482.570 as a part of its case in chief, at least in cases involving orders of suspension for "failure to appear," as in this case.[10]

3. *Due Process Does Not Require that Notice of the Entry of an Order of Suspension for Failure to Appear be Mailed Before Suspension of a Driver's License is Valid*

■ Defendant contends that in a prosecution for driving while suspended under ORS 487.560 due process

---

[10] The analysis proposed by the concurring opinion, including its reliance upon ORS 161.105, was not argued or suggested by either party in this case. Indeed, as noted by the concurring opinion, the contentions submitted by the parties in this case, and decided by this opinion, were quite different. For that reason, as also stated by the concurring opinion, the questions raised by it must be left to an occasion when they are briefed and argued.

requires that the state must prove compliance with the mailing requirements of ORS 482.570 in order to prove a valid suspension. Defendant supports this contention by citing *Bell v. Burson,* 402 US 535, 540, 29 LEd 2d 90, 91 S Ct 1586 (1971), and decisions by the Oregon Court of Appeals.

*Bell v. Burson, supra,* does not hold that unless a copy of an order suspending a driver's license is then mailed to the driver the order of suspension is invalid. Instead, the court in that case addressed the issue of the right to notice and hearing prior to a determination that the license should be suspended. The court stated that due process

> "* * * requires that when a State seeks to terminate an interest such as that here involved (driver's license), it must afford 'notice and opportunity for hearing appropriate to the nature of the case' *before* the termination becomes effective." 402 US at 542 (emphasis in original).

The notice required by *Bell* is therefore notice of a hearing at which it will be decided whether the license should be suspended. At least for drivers whose licenses are suspended for "failure to appear," as in this case, Oregon's statutory scheme provides for notice and hearing prior to suspension. As previously noted, ORS 484.210, the statute providing for the suspension of a driver's license for "failure to appear" at a hearing on a traffic offense, provides that the court "shall at least five days in advance of the hearing mail notice of the date and time so fixed," and that "[t]he notice shall set forth a warning that for failure to appear the defendant's license is subject to suspension unless bail is deposited in the amount set in the summons."[11] In addition, ORS 484.150(7)(a), repealed in 1979 but in effect at the time of defendant's arrest and conviction, provided that a summons to appear in court shall include language that failure to appear may result in a suspension.[12] It follows, in our opinion, that the statutory

---

[11] For the provisions of ORS 484.210, see note 4.

[12] For the provisions of ORS 484.150(7), see note 5. It should be noted that although 484.150(7)(a) seemed to say that failure to appear at an initial court appearance pursuant to a summons might result in a suspension, we have been unable to find any authority that would grant a court the power to recommend a

scheme regarding notice and hearing for those suspended for "failing to appear" at the time of defendant's suspension satisfied the requirements of due process set forth in *Bell.*

Most of the decisions by the Oregon Court of Appeals cited by petitioner, although not binding on this court, also have held that notice and hearing must be given prior to suspension, but did not hold that due process requires that notice be given of the suspension itself. In *State v. Figueroa,* 30 Or App 803, 586 P2d 691 (1977), the Court of Appeals summarized its earlier holdings on the issue by stating:

"The substance of the due process right set out in *Boykin* and reaffirmed in *Floyd* is that a licensee is entitled to a hearing prior to the suspension and entitled to notice of this right." 30 Or App at 805.

*See also Floyd v. Motor Vehicles Div.,* 27 Or App 41, 554 P2d 1024 (1976); *Boykin v. Ott,* 10 Or App 210, 498 P2d 815 (1972). *But see State v. Buen,* 13 Or App 426, 509 P2d 865 (1973), and *State v. Gartzke,* 35 Or App 151, 580 P2d 1062 (1978).

Defendant further contends that "where constructive notice is required as a matter of due process, shifting the burden of proof on that issue to the defendant is unconstitutional," citing this court's decisions in *State v. Stockett,* 278 Or 637, 565 P2d 739 (1977), and *State v. Stilling,* 285 Or 293, 590 P2d 1223 (1979).

In *Stockett,* this court held that under the rule as stated in *Mullaney v. Wilbur,* 421 US 684, 95 S Ct 1881, 44 LEd 2d 508 (1975), an Oregon statute which placed upon a defendant the burden of proving partial responsibility or diminished intent was unconstitutional in that it attempted to shift the burden of proof regarding the

---

suspension in such a case. As discussed in footnote 8, ORS 484.220(2), also in effect at the time of defendant's arrest, provides that a court cannot recommend a suspension unless it has ordered a hearing pursuant to ORS 484.210. Thus, despite the language of ORS 484.150(7)(a), it appears that a court could not have suspended a person's license simply for failing to appear at an initial court appearance set by summons without a hearing being set. It should be noted, however, that even though a driver's license would not be actually suspended in the absence of a further hearing pursuant to ORS 484.210, the notice given to a driver that his license might be suspended might well have provided defendant with notice for purposes of constitutional due process.

defendant's mens rea to the defendant. This court reasoned that in a specific intent crime the existence of the required mental state was an "essential element" of the crime and the burden of proof of that element could not be shifted to the defendant. 278 Or at 642-43. In *State v. Stilling, supra,* this court quoted *Stockett* with approval for its statement of that rule.

In this case, defendant's due process argument under this court's decision in *Stockett* is dependent upon a determination that "constructive notice" of the order suspending defendant's driver's license was an "essential element" of the offense of driving while suspended. If it was such an "essential element," then shifting the burden of proof on that issue to defendant by requiring him to disprove "notice" would be unconstitutional under our analysis in *Stockett.*

Subsequent to its decision in *Mullaney,* and also subsequent to the decision by this court in *Stockett,* the United States Supreme Court decided *Patterson v. New York,* 432 US 197, 97 S Ct 2319, 53 LEd 2d 281 (1977), in which it greatly narrowed the rule announced in *Mullaney.* Because the Oregon Constitution does not have a due process clause of its own, any pronouncement made by this court concerning due process, as discussed in *Stockett,* must rest upon the due process clause of the Constitution of the United States.[13] Thus, because the decision of this court in *Stockett* was based upon its understanding of the requirements of due process as stated in *Mullaney,* the decision by the Supreme Court of the United States in *Patterson* is binding on this court in its application of the rule announced by it in *Stockett.*

In *Patterson* the Supreme Court recognized initially that:

"* * * it is normally 'within the power of the State to regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion,' and its decision in this regard is not subject to proscription under the Due Process Clause unless 'it offends some principle of justice so rooted in the traditions

[13] See Linde, *Without Due Process,* 49 Or L Rev 125, 145-46, 159 (1970).

and conscience of our people as to be ranked as fundamental.'" (Citations omitted) (432 US at 201-202)

The Supreme Court also made it clear in *Patterson* that just because a statute provides that proof of a certain fact constitutes an affirmative defense, it does not follow that those facts are an element of the crime with the burden of proof upon the state. The Court stated:

"We thus decline to adopt as a constitutional imperative, operative countrywide, that a state must disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused. * * * We therefore will not disturb the balance struck in previous cases holding the Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged." (432 US at 210)

*See also* 432 US at 214, n. 15.

The Supreme Court then noted that in *Mullaney* it had held that the state may not shift the burden of proof of an element of a crime to the defendant. The Court in *Patterson,* however, narrowly defined what constitutes an "element" of the crime for purposes of due process, as "a fact which the State deems so important that it must be either proved or presumed." 432 US at 215. The Court then went on to state that under the facts of *Mullaney* such a shifting of an element existed because under the Maine statutes "malice aforethought" was "mentioned in the statutory definition of the crime" so as to be an "element of the crime," and yet that element of malice was "presumed and could only be rebutted by the defendant by proving by a preponderance of the evidence that he acted with heat of passion upon sudden provocation." 432 US at 215-16.

In this case the fact of "notice" does not appear in the definition of the offense of "driving while suspended," which is defined by ORS 487.560(1) simply as the act of driving a motor vehicle during a period when the driver's license has been suspended. Also, although the fact of mailing notice of an order of suspension is required by ORS 482.570, it is specifically provided by ORS 487.560(2) that the fact that the driver did not receive notice is an affirmative defense.

■ ■     As previously noted, we do not believe that it was the intent of the legislature in writing ORS 487.560 and 482.570 to require that notice of the order of suspension be mailed for that order to be valid. It follows, in our opinion, that proof of the mailing of a copy of the order of suspension, as provided by ORS 482.570, was not intended by the legislature to be an "essential element" of the offense of driving while suspended, in violation of ORS 487.560(1). It also follows, in our opinion, that proof of such notice was not required by due process either under the rule of *Stockett* or under the rule of *Patterson.*[14]

As also previously stated, this is a case in which defendant's driver's license was suspended for "failure to appear." Whether the same result would follow in cases in which drivers' licenses are suspended for other reasons and whether in such cases the state would be required by due process to offer evidence of constructive notice as a part of its case in chief is not before the court for decision in this case.

### 4. *Defendant's Other Contentions*

Defendant assigned as error the rejection by the trial court of defendant's offer in evidence of a motor vehicle registration showing an address somewhat different from that listed on the suspension order. Defendant contends that the motor vehicle registration was the last official address of the defendant that the Motor Vehicle Division had, with the result that the Motor Vehicle Division's mailing of the order of suspension to a different address did not properly comply with ORS 482.570, which requires that notice be mailed "to the person's address as shown by division records."[15]

---

[14] Defendant has not contended in this case that he is denied due process by the failure of ORS 487.560 to require a culpable mental state to support a conviction for "driving while suspended," thus making it a strict liability crime.

Other Supreme Court cases on related issues have language strongly supporting the constitutionality of strict liability crimes, at least where "public welfare offenses," such as traffic violations, are involved. *See Lambert v. California,* 355 US 225, 228 (1957); *Morissette v. United States,* 342 US 246, 262 and n. 20 (1952). This is in contrast to the recognition of a strong presumption that crimes having their origin in the common law must have a mens rea element. *See United States v. United States Gypsum Co.,* 438 US 422, 436-38 (1978).

[15] For the provisions of ORS 482.570, see note 2.

The trial court's reason for sustaining the state's objection to admitting the vehicle registration was that it was irrelevant because only the address on the defendant's driver's license is relevant proof under ORS 482.570. Defendant contends that because due process requires that notice be reasonably calculated to reach the person intended, all possible records must be considered that would provide the greatest possibility of reaching the defendant, and that such a record in this case was the motor vehicle registration, citing *People v. Yount,* 484 P2d 1203 (1971 Colo.), for the proposition that the order must be mailed to the last address found anywhere in the Motor Vehicle Division's records.

The trial court held that the vehicle registration was irrelevant and that only the address on the defendant's driver's license is relevant proof under ORS 482.570. Assuming that the correctness of the address to which the notice was sent had any relevance to the issues of this case, we believe that this ruling by the trial court was correct for two reasons.

First, ORS Chapter 482 (which includes the statutory provision now in dispute, ORS 482.570) contains only provisions concerning operators' and chauffeurs' licenses; provisions concerning vehicle registration are found in an entirely separate chapter, ORS Chapter 481. It is reasonable to assume that by the term "division records" in ORS 482.570, the legislature meant those records relating to the subject matter of the statutory chapter within which ORS 482.570 is found, which would be driver's license records and not vehicle registration records.

Second, ORS 482.290(3) requires that persons holding driver's licenses must notify the division of any change of residence from that noted on their license as issued by the Motor Vehicles Division. This requirement indicates an intent that driver's license records be kept current and that they be a current and reliable source of information. It would be unreasonable to require the Motor Vehicles Division to search out other records immaterial to a driver's license suspension when the legislature has set out a scheme to make driver's license records themselves current and reliable. This is particularly true in light of the fact

that the Motor Vehicles Division's driver's license records will be current and reliable unless a driver fails to comply with ORS 482.290(3), which requires drivers to notify the Motor Vehicles Division of a change in address. In our opinion, this court should not place an extra burden upon the Motor Vehicles Division to search out other records solely to compensate for a driver's own neglect.

For these same reasons, we reject the reasoning of the Colorado Court in *Yount, supra,* upon which defendant relies in support of his contention that the Motor Vehicles Division must search all records, including vehicle registration records, to comply with ORS 482.570.

Defendant also contends that the evidence was insufficient to support a verdict of guilty because: (1) the state failed to prove the mailing of notice as required by ORS 482.570; (2) the state failed to prove that the suspension order was in effect at the time of defendant's arrest for driving while suspended; and (3) even if the state is not required to prove mailing of notice in its case in chief, but the defendant can assert lack of receipt of notice as an affirmative defense, the evidence at trial was sufficient to prove that the defendant had carried the burden of proof to establish that defense.

Defendant's contention that the state failed to prove the mailing of notice has already been disposed of by our holding that in this case the state was not required to prove mailing of notice in its case in chief.

■ We do not consider defendant's second contention that there is insufficient evidence to prove that the suspension order was still in effect at the time of defendant's arrest because it does not appear that such a contention was made either at the time of trial or on appeal to the Court of Appeals. *But see State v. Harris,* 288 Or 703, 609 P2d 798 (1980), decided after the trial of this case.

■ For similar reasons, we must reject defendant's final contention that the evidence was insufficient to support a verdict of guilty because the evidence at trial was sufficient to prove that defendant had carried the burden of proof of the affirmative defense that he had not received notice of the suspension of his driver's license. Defendant

has not shown either by his petition for review or by proper assignment of error in his brief to the Court of Appeals that any such contention was made in the trial court. Both his motion for acquittal and his motion for arrest of judgment were based upon other grounds.

In *State v. Long,* 246 Or 394, 425 P2d 528 (1967), the defendant contended on appeal, as in this case, that the evidence was insufficient to support a finding of guilt. In rejecting that contention this court said (at 396-97):

> "Since defendant failed to raise that issue in the trial court, he cannot raise it for the first time in this court. As we reiterated in *State v. Abel,* 241 Or 465, 467, 406 P2d 902 (1965), 'it is still the rule in this state in criminal as in civil cases that "a question not raised and preserved in the trial court will not be considered on appeal." ' See, also, *State v. Moore,* 238 Or 117, 393 P2d 180 (1964); *State v. Sanders,* 232 Or 631, 376 P2d 668 (1962); *State v. Avent,* 209 Or 181, 302 P2d 549 (1956)."

■ There may be some exceptions to this rule, but not in this case.[16]

For all of these reasons, we hold that the Court of Appeals properly affirmed defendant's conviction.

Affirmed.

**LINDE, J.,** concurring.

In order not to misconstrue the import of the holding on this record for other cases, something more needs to be said about the elements of the crime of driving a motor vehicle when one's driver's license has been suspended and the significance of the "affirmative defense" that one has not received the statutory notice of the suspension.

This case has been argued on the issue whether the proper mailing of *notice* of the suspension is a prerequisite of the suspension and an element of the offense of driving while suspended. If so, it might be unconstitutional to

---

[16] Defendant also contends that the trial court erred in failing to hold that the defense or affirmative defense of lack of notice had been properly raised. Again, defendant has not shown by any proper assignment of error in his brief to the Court of Appeals that he objected to the failure of the trial court to make such a finding.

make failure to *receive notice* an affirmative defense to be raised and proved by the defendant. Even under *Patterson v. New York,* 432 US 197, 97 S Ct 2319, 53 L Ed 2d 281 (1977), 14th amendment due process does not let the state shift to the defendant the burden of disproving an element of the crime with which he or she is charged. It only permits assigning to the defendant the burden to show "affirmative defenses" that are recognized as "mitigating circumstances," 432 US at 206, 209, i.e., circumstances that to some specified degree "exculpate or mitigate" conduct which otherwise includes all elements of the crime.[1] 432 US at 207. The question, therefore, is what is an element of the offense and what is an "exculpatory" or "mitigating" circumstance under the laws governing the crime of driving while suspended.

The legislature's answer is found in the following statutes. ORS 161.095(2), as part of the 1971 revision of Oregon's criminal law, enacted the principle that criminal guilt requires a culpable mental state except as stated in the next section.[2]

That exception, ORS 161.105, is stated as follows:

"(1)    Notwithstanding ORS 161.095, a culpable mental state is not required if:

"(a)    The offense constitutes a violation, unless a culpable mental state is expressly included in the definition of the offense; or

"(b)    An offense defined by a statute outside the Oregon Criminal Code clearly indicates a legislative intent to dispense with any culpable mental state requirement for the offense or for any material element thereof.

---

[1] I do not here pursue the conundrum how the presence or absence of a specified fact can excuse or reduce a defined crime without thereby making the absence or presence of that fact an element of guilt of *that* crime. That this is a conundrum is plain once we focus on the question of the actor's guilt of the crime *at the time of his act* (for instance, when driving without notice that one's license has been suspended) rather than on the procedure at the time of trial. However, as the Court says, on this 14th amendment issue we take the word of the Supreme Court.

[2] ORS 161.095(2):

"Except as provided in ORS 161.105, a person is not guilty of an offense unless he acts with a culpable mental state with respect to each material element of the offense that necessarily requires a culpable mental state."

"(2)   Notwithstanding any other existing law, and unless a statute enacted after January 1, 1972, otherwise provides, an offense defined by a statute outside the Oregon Criminal Code that requires no culpable mental state constitutes a violation.

"(3)   Although an offense defined by a statute outside the Oregon Criminal Code requires no culpable mental state with respect to one or more of its material elements, the culpable commission of the offense may be alleged and proved, in which case criminal negligence constitutes sufficient culpability, and the classification of the offense and the authorized sentence shall be determined by ORS 161.505 to 161.605 and 161.615 to 161.655."

We recently discussed these sections in *State v. Wolfe,* 288 Or 521, 605 P2d 1185 (1980). In short, they provide that a culpable mental state is required for all offenses except those that are punishable only as violations.[3] Violations require a culpable mental state only when expressly included in the definition of the offense. When an offense created outside the criminal code "clearly" is intended to require no culpable mental state, that offense is punishable only as a violation. These rules are designed to carry out the "general purpose" to "limit the condemnation of conduct as criminal when it is without fault." ORS 161.025.[4]

How does "driving while suspended" fit into this framework? First, it is an offense "defined by a statute outside the Oregon Criminal Code." ORS 487.560. The second question under ORS 161.105(1)(b), above, is whether the statute clearly dispenses with any culpable mental state requirement. ORS 487.560 does not clearly specify or clearly dispense with such a requirement. It is silent on the point. However, the context indicates that a culpable mental state is an element of driving while suspended.

---

[3] "Violations" are not "crimes." "An offense is either a crime or a violation or a traffic infraction." ORS 161.505. An offense is a violation if it is so designated or if it is punishable only by a fine, forfeiture, or other civil penalty. ORS 161.565, 161.575.

[4] ORS 161.025(1):

"The general purposes of chapter 743, Oregon Laws 1971, are:

. . . .

"(d) To define the act or omission and the accompanying mental state that constitute each offense and limit the condemnation of conduct as criminal when it is without fault.

. . . ."

ORS 487.560(1) provides:

"A person commits the crime of driving while suspended if he drives a motor vehicle upon a highway during a period when his license or permit to drive a motor vehicle or his right to apply for a license to drive a motor vehicle in this state has been suspended by a court or by the division or revoked by the division or if he drives a motor vehicle outside the restrictions of a license issued under ORS 482.475 or 482.477."

It defines the offense as a "crime." By subsections (5) and (6), the crime is either a Class A misdemeanor or a Class C felony. The legislative assembly in ORS 161.025, *supra,* has said, and we ordinarily assume, that it does not intend to make a criminal of one who has no reason to know the facts that make his conduct unlawful. *Cf. State v. Wolfe, supra.* That applies to one who drives in good faith on a license issued by the state without reason to suspect that the license has been suspended or otherwise terminated. It is borne out by the various provisions for notice discussed by the Court.

Moreover, if ORS 487.560 were read to dispense with a culpable mental element, then ORS 161.105(2), quoted above, would reduce the offense of driving while suspended from the crime which it purports to define to a violation.[5] If ORS 487.560 indicates anything, it is that the legislature was more intent on making driving while suspended a serious offense than to eliminate any culpable element and make violators of people who have no reason to doubt the continued validity of their drivers' licenses.

Nevertheless, even though the statute does not dispense with a culpable mental state as an affirmative element of the crime, and as a practical matter the prosecution may prove the sending of notice as the most likely evidence to show that element, it does not follow that sending notice of the suspension itself is such an affirmative element. Thus the question what degree of knowledge or careless failure to inquire into the status of one's license constitutes the required element of culpability is properly

---

[5] This is so unless ORS 487.560, which is "a statute enacted after January 1, 1972" "otherwise provides." But again, ORS 487.560 does not expressly "otherwise provide"; it is silent on the point.

left to an occasion when it is briefed and argued.[6] It only deserves to be pointed out that the present case does not decide that question.

---

[6] *Cf.* ORS 161.085(6) to (10), defining the different kinds of "culpable mental state."