Argued and submitted February 15, affirmed May 10, reconsideration denied July 28, petition for review denied August 29, 1989 (308 Or 315)

## STATE OF OREGON,
*Respondent,*

*v.*

## DAVID PAUL COX,
*Appellant.*

(10-87-02500; CA A49180)

772 P2d 1385

George W. Kelly, Eugene, argued the cause and submitted the brief for appellant.

Janet Metcalf, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

Defendant appeals his conviction for unauthorized use of a motor vehicle. ORS 164.135. He assigns as errors the trial court's denial of his demurrer and its denial of his motion for judgment of acquittal. We affirm.

Defendant, who has an extensive criminal record, was working as an informant for the Eugene police, who were investigating several burglaries, one of which involved the theft of guns. Defendant informed them that one of the key suspects in that burglary, Young, had possession of the stolen guns. He also told the police that Young did not have his own transportation. As part of an undercover operation to confiscate the guns by arranging for their purchase through defendant, the police provided defendant with a car. It was hoped that he would be able to gain Young's confidence, arrange for a sale of the weapons to Officer Raynor and transport Young and the weapons to the agreed location, where the sale and subsequent arrest of Young would take place.

Detective Green, who was supervising the operation, testified that defendant was given the car on March 7 or 8. Unbeknownst to defendant, it was equipped with a tracking device that would enable the police to track it so long as it was in the Eugene-Springfield area. Defendant was also given a body wire to record his conversations.

Although Green did not specifically place limits on defendant's driving the car, he instructed defendant that it was to be used for the investigation. Other officers involved in the investigation testified that they told defendant that the car was for transporting Young and the stolen guns and that he was to keep the police informed at all times. All the officers agree that at no time was defendant given permission to take the car outside Eugene.

Defendant's testimony is that the only instructions he received when he was given the car keys were "to drive careful and, please, God, don't get in a wreck." He said that he was never specifically told not to leave Eugene. He also stated that he was allowed to use the car for his personal transportation around town and that, on one occasion, he drove on the highway beyond the range of the tracking device without objection from the police.

On March 10, defendant called Raynor and arranged for the sale of the guns to take place that evening at the Eugene Holiday Inn. Defendant testified that he did not know the location of the guns at that time and that Young was present during the call. According to defendant, he then drove Young home, where they were met by two men, and he was directed to drive one of the men, Faucet, to Lake Oswego to get the guns. He picked up a third man, McCarl, in Portland before dropping Faucet off. He testified that he intended to pick up Faucet in time to drive back to Eugene for the sale to Raynor. That never occurred, however, because the Portland police stopped the car, with McCarl at the wheel, for speeding.

The officer who stopped the car testified that the fact that the car was completely clean except for the rear license plate, which was caked with mud, made her suspicious. Neither McCarl nor defendant had any identification, and there were no papers proving ownership of the car. Defendant, who was dressed as a woman,[1] identified himself as Sherry Lynn Cox and told the officer that a friend of his had rented the car. A routine check by the officer revealed that McCarl was driving while suspended. McCarl was arrested, the car was impounded and defendant was allowed to leave. He did not reveal his identity as an informer. Raynor testified that, when no one showed up for the sale, he called Young, who told him that he had not spoken with defendant that day, was not aware of the arrangement to sell the guns and did not know where defendant was.

Defendant was charged with violating ORS 165.135(1)(a). The indictment alleged that on or about March 10, 1987, defendant

> "did unlawfully and knowingly, having a 1986 Mazda motor vehicle rented by the City of Eugene, Eugene Police Department pursuant to conditions that the defendant could operate the vehicle only in the Eugene, Oregon area and for purposes designated by the Eugene Police Department, did thereafter take the vehicle outside of Eugene and use it beyond the conditions of that agreement, without the consent of the City of Eugene, Eugene Police Department, the owner of the vehicle; contrary to statute and against the peace and dignity of the State of Oregon."

---

[1] Defendant testified that he is a "trans-sexual" and that he was dressed as a woman throughout the investigation.

ORS 164.135 provides:

"(1) A person commits the crime of unauthorized use of a vehicle when:

"(a) The person takes, operates, exercises control over, rides in or otherwise uses another's vehicle, boat or aircraft without consent of the owner; or

"(b) Having custody of a vehicle, boat or aircraft pursuant to an agreement between the person or another and the owner thereof whereby the person or another is to perform for compensation a service for the owner involving the maintenance, repair or use of such vehicle, boat or aircraft, the person intentionally uses or operates it, without consent of the owner, for the person's own purpose in a manner constituting a gross deviation from the agreed purpose; or

"(c) Having custody of a vehicle, boat or aircraft pursuant to an agreement with the owner thereof whereby such vehicle, boat or aircraft is to be returned to the owner at a specified time, the person knowingly retains or withholds possession thereof without consent of the owner for so lengthy a period beyond the specified time as to render such retention or possession a gross deviation from the agreement."

Defendant challenges the indictment on the ground that the crime under subsection (1)(a) only occurs when a vehicle is taken without any consent and not when its use merely exceeds the scope of permission, as it did here.[2] He contends that, because subsections (b) and (c) apply to specific situations where consent was initially given and then abused, subsection (a) applies only when possession was obtained illegally. Alternatively, he argues that, even if subsection (a) does apply where permission was initially given and then exceeded the requirement of a "gross deviation" from the initial consensual use should be implied from subsections (b) and (c).[3]

---

[2] Defendant also argues that the statutory term "without consent" is unconstitutionally vague. Because defendant makes this argument for the first time on appeal, we do not address it. *State v. Stroup,* 290 Or 185, 204, 620 P2d 1359 (1980); *State v. Kessler,* 289 Or 359, 371 n 17, 614 P2d 94 (1980); *State v. Hickman,* 273 Or 358, 360, 540 P2d 1406 (1975).

[3] In support of his arguments, defendant relies on two New York cases. Although he is correct that the New York unauthorized use statute was a source for ORS 164.135, the cases that he cites are inapposite. *People v. Carrington,* 139 Misc 2d 122, 526 NYS2d 705 (NY City Crim Ct 1988), involved a charge under a different section of the New York statute. In *People v. Johnson,* 71 Misc 2d 423, 336 NYS2d 179 (NY City Crim Ct 1972), the defendant, at the time of her arrest, was driving a rented car with the consent of the lessee, her uncle, in violation of the rental agreement. The car was still within the agreed lease period. The court concluded that, although her uncle might be liable for breach of contract, defendant could not be prosecuted on a charge of unauthorized use.

■　Defendant's arguments are contrary to the statutory language and legislative history. ORS 164.135(1)(a) states that a crime is committed when a person, without consent, "takes, operates, exercises control over, rides in *or* otherwise uses another's vehicle * * *." (Emphasis supplied.) Defendant's reading of the statute ignores every verb except "takes." If the legislature had intended to limit the statute to nonconsensual takings when no permission was ever given, it would not have used the other, more inclusive verbs. The commentary to the statute confirms this:

> "This section covers the 'joy-riding' type of offense where the actor makes unauthorized use of another's vehicle but without the intent to steal it or permanently deprive the owner of its use. The purpose of the language, 'takes, operates, exercises control over, rides in or otherwise uses,' is to prohibit not only the taking or driving of another's vehicle without permission but, also, to prohibit *any* unauthorized use of the vehicle." Commentary to Oregon Criminal Code of 1971, 177 (1975 ed). (Emphasis in original.)

We turn to defendant's second assignment of error, that the trial court improperly denied his motion for judgment of acquittal. The inquiry is whether, after viewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Harris,* 288 Or 703, 721, 609 P2d 798 (1980). Defendant argues that there is no evidence that he knew that he lacked consent to drive to Portland. We hold to the contrary.

■　The police emphasized that defendant was to act only under their supervision and control and not on his own. He was never instructed to leave the Eugene Area. One of the officers testified that he warned defendant, several days before his disappearance with the car, that he should stop "jacking [the police] around" and that he should keep in close contact with them. There was sufficient evidence from which a rational trier of fact could infer that defendant knew that he did not have permission to drive to Portland without first notifying the police.

Moreover, the jury could have reasonably concluded from the evidence that defendant had abandoned his part in the investigation and was absconding. There was testimony .

that defendant had not actually made arrangements with Young to sell the guns to Raynor. When police stopped the car in Portland, the otherwise clean vehicle had mud obscuring the rear license plate. Defendant testified that McCarl had stopped along the road and put the mud on the plate. Although defendant contends that he was on his way to pick up the stolen guns in Lake Oswego, the officer who stopped the car testified that defendant was taking a "bizarre" route to his claimed destination. Defendant gave that officer a false name and sex, told her that a friend had rented the car and walked away without mentioning his role as an informant. The trial court properly denied defendant's motion for judgment of acquittal.

Affirmed.